# IN THE SUPREME COURT OF IOWA

No. 12–2221

Filed May 16, 2014

**STATE OF IOWA,**

Appellee,

vs.

**TONY GENE LUKINS,**

Appellant.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for O'Brien County, Charles K. Borth, Judge.

The State seeks further review of a court of appeals decision reversing a district court's denial of a motion to suppress evidence of Breathalyzer-test results. **DECISION OF COURT OF APPEALS AFFIRMED; JUDGMENT OF DISTRICT COURT REVERSED AND CASE REMANDED.**

David R. Johnson of Brinton, Bordwell & Johnson, Clarion, for appellant.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, and Micah J. Schreurs, County Attorney, for appellee.

**ZAGER, Justice.**

Tony Lukins was arrested for operating while intoxicated. After registering a .207 on a breath test at the O'Brien County jail, Lukins made several statements to the arresting officer indicating his desire to retake the breath test. After a great deal of discussion, the officer denied Lukins's request. Prior to trial, Lukins moved to suppress the breath-test result arguing suppression was required because he had been denied his statutory right to an independent chemical test. The district court denied Lukins's motion, and after a bench trial on the minutes of testimony, it convicted Lukins of operating while intoxicated, second offense. Lukins appealed, and we transferred the case to the court of appeals. The court of appeals reversed his conviction, holding the district court erred in denying his motion to suppress. The State sought further review, which we granted. For the reasons set forth below, we affirm the decision of the court of appeals and reverse the judgment of the district court.

## I. Background Facts and Proceedings.

Around 1:40 a.m. on February 9, 2012, Chief of Police Timothy Rohrbaugh witnessed a black pickup truck run a stop sign in Sutherland, Iowa. After following the truck a short distance, Rohrbaugh turned on his police cruiser's flashing lights. The truck did not stop. Rohrbaugh pursued the truck onto a highway, where the truck reached speeds of more than eighty miles per hour. At one point, the truck was jerked back onto the pavement after veering into a ditch. After the truck was straightened, it travelled a short distance and came to a stop.

Rohrbaugh went to the truck and immediately suspected the driver had been drinking. He smelled alcohol and noticed the driver had

slurred speech and a bloody chin. The driver, Tony Lukins, stated he "had a few of beers at the bar."

After being requested by Rohrbaugh to perform field sobriety tests, Lukins agreed to do so. After completing three of the four field sobriety tests, Rohrbaugh asked Lukins to get into his squad car. While Rohrbaugh removed items from off the front passenger seat, Lukins stumbled and fell down into the ditch beside the road. After Lukins got into the squad car, Rohrbaugh conducted a preliminary breath test. After confirming the preliminary breath test indicated Lukins's blood alcohol content was above the legal limit, Rohrbaugh arrested him for operating while intoxicated and transported him to the county jail in Primghar, Iowa.

At the jail, Rohrbaugh read Lukins the implied consent advisory and requested Lukins consent to a Breathalyzer test. Lukins, who was bleeding from a cut on his chin, consented to the Breathalyzer test. The Datamaster result of the Breathalyzer test was .207, over the legal limit of .08. After Rohrbaugh informed Lukins of this result, the following conversation was captured by the jail's security cameras:

> LUKINS: I don't mean to be an a** or anything, but can I get a re-check, or anything . . . ?
>
> ROHRBAUGH: A what?
>
> LUKINS: . . . the way I'm bleeding . . . .
>
> ROHRBAUGH: A rain check?
>
> LUKINS: A re-check. You know, with this blood and that.
>
> ROHRBAUGH: You want your blood checked?
>
> LUKINS (looking at and gesturing toward the Breathalyzer machine): No, can I get a re-check?

ROHRBAUGH (tapping the breath-test machine): A re-check of this?

LUKINS: Yeah.

ROHRBAUGH: And what's the blood gonna make it different, or . . . ?

LUKINS: I don't know. I'm just . . . I didn't know I was bleeding this f***ing bad until you pulled me over and I looked at my hand.

ROHRBAUGH: I don't think we need to do another check because I don't think the blood or the bleeding had anything to do with your breath.

LUKINS: Well, no, I just was . . . I don't know what the heck to really check, to tell you the truth.

After Rohrbaugh read Lukins advisories about the revocation of his driver's license, Lukins returned to the issue of the test:

LUKINS: Can I ask for a re-blow, by the way?

ROHRBAUGH: It isn't going to be any different.

LUKINS: That seems really f***ing high. For four f***ing beers that seems . . . or, actually, I'm sorry, a six pack, that seems really high.

. . . .

LUKINS: Can I get a re-blow please, Rohrbaugh?

ROHRBAUGH: It isn't going to be any different.

LUKINS: You don't think so?

ROHRBAUGH: No.

LUKINS: Can we try it?

ROHRBAUGH: No.

Rohrbaugh then transferred Lukins to a deputy at the county jail. Lukins asked the deputy,

LUKINS: Can I get a re-breathalyzer test, by the way? For a point-two-oh? [referring to his blood–alcohol content].

DEPUTY: That's not my call; that's up to the officer.

No second test or independent chemical test was offered or performed.

On March 5, Lukins was charged by trial information with operating while intoxicated, second offense, under Iowa Code sections 321J.2(1)(*a*) and 321J.2(1)(*b*).[1]  *See* Iowa Code § 321J.2(1)(*a*), (*b*) (2011). Prior to trial, Lukins filed a motion to suppress the Breathalyzer results. Lukins argued his statements at the county jail implicated his right to obtain an independent chemical test under Iowa Code section 321J.11.[2] According to Lukins, once he implicated the right, officers were required to advise him of his right to obtain an independent chemical test.  The officers' failure to do so, Lukins insisted, was a denial of his right to an independent chemical test.  Because Lukins was not provided a reasonable opportunity to obtain an independent chemical test, he argued the results of the breath test should be suppressed.  The State resisted.

After a hearing, the district court issued its ruling on Lukins's motion.  The district court found based on the video recording that Lukins's requests could not reasonably be construed as requesting an independent test.  The district court instead concluded Lukins requested

---

[1]Lukins received a deferred judgment for operating while intoxicated, first offense, in November 2005.

[2]There is some question whether the permissive phrasing of Iowa Code section 321J.11 confers a "right" upon detainees to have an independent chemical test.  *See* Iowa Code § 321J.11 (providing "[t]he person *may* have an independent chemical test . . . administered at the person's own expense (emphasis added)).  We have never addressed this issue.  In a number of cases, however, we have referred to a "statutory right to an independent test."  *See, e.g., State v. Bloomer*, 618 N.W.2d 550, 553 (Iowa 2000); *State v. Wootten*, 577 N.W.2d 654, 656 (Iowa 1998) (explaining the record was unclear about when the detainee "first knew of his right to an independent test"); *State v. Epperson*, 264 N.W.2d 753, 756 (Iowa 1978) ("Regarding defendant's statutory claims, he had a right to have an independent chemical test.").  Neither party raises this issue in this case.  Therefore, we assume for purposes of this appeal that Iowa Code section 321J.11 does confer a statutory right to an independent chemical test upon detainees.

a second test using the Breathalyzer machine. According to the district court, these statements were inadequate to invoke Lukins's statutory right to an independent chemical test. Therefore, the district court denied Lukins's motion to suppress the Breathalyzer results.

On November 15, the matter proceeded to a bench trial on the minutes of testimony. The district court found Lukins guilty of operating while intoxicated, second offense. The district court sentenced Lukins the same day.

Lukins appealed the ruling on the motion to suppress, and we transferred the case to the court of appeals. The court of appeals reversed, holding Lukins had invoked his right to an independent chemical test. The court of appeals reasoned that once Lukins invoked the right, officers were required to inform him of his right to obtain an independent chemical test. Because the officers had not done so, the results of the Breathalyzer test should have been suppressed. The court of appeals remanded for a new trial.

The State sought further review, which we granted.

**II. Standard of Review.**

The district court denied Lukins's motion to suppress based on its interpretation of Iowa Code section 321J.11. We review for correction of errors at law a district court's ruling on a motion to suppress based on the interpretation of a statute. *State v. Madison*, 785 N.W.2d 706, 707–08 (Iowa 2010); *State v. Fischer*, 785 N.W.2d 697, 699 (Iowa 2010).

**III. Discussion.**

**A. Invocation of the Right to an Independent Test.** Iowa Code section 321J.11, in relevant part, provides:

> The person [whose breath, blood, or urine is being examined to determine blood alcohol concentration] may have an independent chemical test or tests administered at

the person's own expense in addition to any administered at the direction of a peace officer.

Iowa Code § 321J.11.

In this case, we address whether Lukins adequately invoked his statutory right to an independent chemical test. The State argues Lukins did not do so. According to the State, Lukins's statements indicate he sought only to take a second test using the Breathalyzer machine, an opportunity to which he was not statutorily entitled. Lukins, on the other hand, contends his statements should have been reasonably construed by officers as a request for an independent chemical test, at which point they should have informed him of his statutory right to an independent chemical test. He argues their failure to do so requires suppression of the Breathalyzer results obtained by Rohrbaugh.

Lukins likens this case to those in which we have interpreted Iowa Code section 804.20. That statute provides a peace officer must permit a person "arrested or restrained of the person's liberty . . . to call, consult, and see a member of the person's family or an attorney of the person's choice, or both." *Id.* § 804.20. Unlike the statute before us in this case, we have thoroughly delineated under Iowa Code section 804.20 a peace officer's obligation to explain the detainee's rights when a detainee implicates his or her right to make a telephone call and the standard used to determine whether a detainee has adequately invoked that right.

In *Didonato v. Iowa Department of Transportation,* after his arrest for operating while intoxicated, a detainee asked to call a friend, but the police officer denied him the opportunity to make the telephone call. 456 N.W.2d 367, 368 (Iowa 1990). Despite affirming the detainee's license revocation, we explained that "when a request to make a phone call is made" an officer cannot refuse the request even "if the request is to call a

friend." *Id.* at 371. If the suspect requests to call a friend, "the statute is implicated and the officer should then advise for what purpose a phone call is permitted under" Iowa Code section 804.20. *Id.* We later reaffirmed this rule. *See State v. Garrity*, 765 N.W.2d 592, 597 (Iowa 2009) (holding the peace officer should have informed the suspect of the scope of individuals to whom a call could be placed when suspect requested to call an individual outside of that scope). We have also explained the detainee's and officer's statements and conduct, as well as surrounding circumstances, are considered objectively. *State v. Moorehead*, 699 N.W.2d 667, 672 (Iowa 2005).

Those cases left open the standard by which to determine whether a detainee's statements to law enforcement were adequate to invoke his or her rights under Iowa Code section 804.20. *See State v. Hicks*, 791 N.W.2d 89, 94 (Iowa 2010) (noting the use of two frameworks to assess the adequacy of a detainee's invocation). In *Hicks*, after his arrest for operating while intoxicated, the detainee made repeated requests to make a telephone call so that he could go home. *Id.* at 96. The police officer denied the requests. *See id.* at 97. In interpreting the statute, we rejected the unambiguous-request standard used for requests for counsel in certain cases under the Fifth Amendment, disapproving of its focus "on the grammatical clarity of the detainee's request." *See id.* at 94–95 (noting the scholarly debate the unambiguous-request standard engendered). We held that it would be better "to liberally construe a suspect's invocation of this right." *Id.* at 95. We therefore held any statement that may be reasonably construed as invoking the detainee's right to communicate with family or counsel is adequate. *Id.*

The State distinguishes the line of cases under Iowa Code section 804.20 as implicating the fundamental right to counsel, which is plainly

not implicated in this case. The State is correct—we signaled concerns about detainees' access to counsel that depended on their ability to clearly and grammatically invoke their right. *See, e.g., id.* (citing *State v. Effler*, 769 N.W.2d 880, 896 (Iowa 2009) (Appel, J., specially concurring) (noting commentary critical of the unambiguous-request standard because it "makes important constitutional rights turn on linguistic finery")). The overriding concern in those cases, though, was that the detainees lacked crucial knowledge about their right to communicate with a family member or lawyer, thus making invoking the right more difficult. *See Didonato*, 456 N.W.2d at 371 (holding that when a detainee requests to call a friend the officer must inform the detainee of the purposes for which a telephone call is permitted). Iowa Code section 804.20 does not require a peace officer to inform the detainee of his or her right to make a telephone call. *Hicks*, 791 N.W.2d at 94. In *Garrity*, we observed nevertheless that a detainee may be aware he or she has a right to make a telephone call; however, the detainee may be unaware that a statute limits to whom such a call may be made. *See* 765 N.W.2d at 597. For that reason, if the detainee suggests calling someone outside the scope of individuals authorized by the statute, the peace officer, who knows the statutory scope, must clarify to the detainee the scope of individuals to whom a telephone call may be made under Iowa Code section 804.20. *See id.*; *see also Hicks*, 791 N.W.2d at 95 (concluding a reasonableness standard best ensures detainees will be accorded their statutory right to make a telephone call). In short, the absence or shortage of knowledge on the detainee's part warranted enabling the detainee to invoke his or her rights by legally inaccurate requests.

It is clear that a detainee may be similarly unaware of his or her rights under Iowa Code section 321J.11. First, as with the right to a

telephone call under Iowa Code section 804.20, an officer need not advise a suspect of his or her right to an independent chemical test. *State v. Wootten,* 577 N.W.2d 654, 655 (Iowa 1998); *State v. Epperson,* 264 N.W.2d 753, 756 (Iowa 1978). Also, like the detainee unaware of to whom a telephone call may be placed, the detainee who submits to the police officer's requested blood alcohol test may have some vague notion that he or she is entitled to an independent chemical test. He or she may not know, however, that the chemical test is available only after the detainee submits to the officer's requested test or that the statute does not entitle the detainee to a second test on the Breathalyzer machine. *See State v. Bloomer,* 618 N.W.2d 550, 553 (Iowa 2000) (explaining a detainee is entitled to an independent test after the detainee "has submitted to a requested test"). Under these circumstances, it would not be unexpected that the detainee's oral attempts to invoke his or her rights are legally inaccurate. The similarity of circumstances between the detainee's knowledge of his or statutory right to a telephone call and his or her statutory right to an independent chemical test indicate the standard for invoking the right should be similar as well.

Holding statements that may be reasonably construed as invoking the detainee's statutory right to an independent chemical test adequate also promotes consistency in this area of the law. A detainee is required under Iowa Code section 321J.11 to request an independent test "within a reasonable time under the circumstances." *See Wootten,* 577 N.W.2d at 656. A peace officer need only use reasonable methods, under the circumstances, to convey to a drunk-driving suspect the implied consent warnings. *See State v. Garcia,* 756 N.W.2d 216, 222 (Iowa 2008). And, of course, any statement that may be reasonably construed as invoking the detainee's statutory right to a telephone call is adequate to do so.

*See Hicks*, 791 N.W.2d at 95. A reasonableness standard thus currently governs many interactions between officers and detainees, and to apply a different rule or standard here would be inconsistent with this existing framework.

In addition, we previously gave a strong indication of an officer's obligation to inform a detainee of his or her rights under Iowa Code section 321J.11 once that right is invoked. Although we did not directly address this issue, we explained in *Ginsberg v. Iowa Department of Transportation* that when a detainee requests an independent chemical test, officers should convey to the detainee information about the detainee's statutory right to the independent test. *See* 508 N.W.2d 663, 664 (Iowa 1993). In that case, police officers treated a detainee's request for a blood or urine test as a refusal to submit to a breath test. *Id.* Holding the detainee's request was not a refusal, we instructed that when he "requested that his blood or urine be tested in addition to his breath, the peace officer should have explained that, after the requested breath test had been completed, [the detainee] would be able to have other substances tested." *Id. Ginsberg* does not control here; however, it shows that in this context, as in the context of Iowa Code section 804.20, we have disapproved of peace officers impeding detainees' access to rights granted by the legislature.

With those considerations in mind, we see no reason why a detainee should be required to string together a precise formulation of words mirroring the statutory language in order to invoke his or her statutory right to an independent chemical test. Therefore, under Iowa Code section 321J.11 a detainee's statements should be liberally construed. *Cf. Hicks*, 791 N.W.2d at 95 (stating under Iowa Code section 804.20 a suspect's invocation of his or her right should be liberally

construed). And like under Iowa Code section 804.20, any statement that can be reasonably construed as a request for an independent chemical test is adequate to invoke the detainee's right to such a test under Iowa Code section 321J.11. As with officers who fielded phone call requests in *Didonato,* an officer who fields a legally imprecise request for an independent test cannot stand mute and deny the request. *Cf.* 456 N.W.2d at 371 (explaining that when a request for a phone call is made the statute's purpose is not "met if the officer stands mute and refuses the request"). Rather, if an imprecise statement, reasonably construed, implicates the statute, then the officer should inform the detainee of his or her right to an independent chemical test under Iowa Code section 321J.11. *Cf. id.*

Applying the standard set forth above, Lukins implicated his statutory right to an independent chemical test. At the outset of the conversation, Lukins asked, "[C]an I get a re-check . . . ?" In fact, on several occasions during his conversation with Rohrbaugh, Lukins asked for a "re-check" or a "re-blow." Clearly these entreaties do not closely track with the language of Iowa Code section 321J.11. But this scenario is similar to the requests by the detainees in *Didonato* and *Garrity*. In both those cases, the detainees requested to make telephone calls to individuals to whom Iowa Code section 804.20 did not authorize calls, and we held their statements implicated that statute. *Garrity*, 765 N.W.2d at 597 (holding an officer must inform a detainee of the individuals to whom a call is permitted when the detainee requests to call someone outside the statute's permissible scope); *Didonato*, 456 N.W.2d at 371 (holding when a detainee asks to call a friend the officer must inform the detainee the purpose for which a call is permitted). As with the statutorily impermissible requests in those cases, Lukins was

not entitled under Iowa Code section 321J.11 to take a second crack at the Breathalyzer machine. Nevertheless, his statements, reasonably construed, indicated he wanted another test, even if he was mistaken, unsure, or unaware of the way in which the additional test would be conducted. His statements, like those of the detainees in *Didonato* and *Garrity*, were adequate to implicate the statute. When Lukins implicated Iowa Code section 321J.11, Rohrbaugh should have informed Lukins that he was entitled to an independent chemical test at his "own expense in addition to" the Breathalyzer test. Iowa Code § 321J.11. Because Rohrbaugh did not do so, he violated Lukins's statutory right to an independent chemical test.

**B. Remedy.** The question remains whether the Breathalyzer test Rohrbaugh conducted must be suppressed because Lukins was denied his statutory right to an independent chemical test. Iowa Code section 321J.11 provides that "[t]he failure or inability of the person to obtain an independent chemical test or tests does not preclude the admission of evidence of the results of the test or tests administered at the direction of the peace officer." An opinion of our court of appeals suggested that denying a detainee's right to an independent chemical test was not a "failure" or "inability to obtain" the test, so the statute would not prevent suppression under circumstances like these. *See Casper v. Iowa Dep't of Transp.*, 506 N.W.2d 799, 802 (Iowa Ct. App. 1993). In fact, the court of appeals reasoned, the police officer's test would have to be suppressed lest the statutory right to an independent test be rendered meaningless. *See id.*; *see also id.* at 803 (Habhab, J., specially concurring) ("Nothing would prevent the ignoring of the request."). Afterward, while leaving open the question of suppression, this court cast doubt on *Casper*'s

reasoning. *See Wootten*, 577 N.W.2d at 655–56 (noting *Casper* "was a license revocation case," not a criminal case).

Several states have statutes with language nearly identical to ours. *See, e.g.*, Alaska Stat. Ann. § 28.35.033(e) (West, Westlaw current through 2014 2d Reg. Sess.) ("The failure or inability to obtain an additional test . . . does not preclude the admission of evidence relating to the test taken at the direction of a law enforcement officer . . . ."); Mont. Code Ann. § 61-8-405(2) (Westlaw current through the 2013 Sess.) ("The failure or inability to obtain an independent test . . . does not preclude the admissibility in evidence of any test given at the direction of a peace officer."); Ohio Rev. Code Ann. § 4511.19(D)(3) (West, Westlaw current through Files 1 to 94 of the 130th Gen. Assemb. (2013–2014)) ("The failure or inability to obtain an additional chemical test . . . shall not preclude the admission of evidence relating to the chemical test or tests taken at the request of a law enforcement officer."). More important, courts interpreting statutory language similar to ours have held suppression of the officer's requested test is the minimum remedy when the detainee is denied his or her statutory right to an independent chemical test. *See, e.g., Lockard v. Town of Killen*, 565 So. 2d 679, 682 (Ala. Crim. App. 1990) (rejecting a literal reading of the words "failure or inability" and holding results of law enforcement Breathalyzer test must be suppressed); *Ward v. State*, 758 P.2d 87, 90 (Alaska 1988) (concluding when "the police deprive a defendant of his or her statutory right to an independent blood test, the results of the defendant's breath test must be excluded"); *Unruh v. State*, 669 So. 2d 242, 245 (Fla. 1996) (concluding suppression was the appropriate remedy when a detainee was denied an independent test); *State v. Schauf*, 216 P.3d 740, 746 (Mont. 2009) (explaining "the proper result is suppression of the results

of the law enforcement test"); *Koenig v. N.D. Dep't of Transp.*, 810 N.W.2d 333, 336 (N.D. 2012) ("If an individual is denied this statutory right [to an independent blood or chemical test], results of tests administered at the direction of law enforcement may be suppressed or the charges may be dismissed."); *State v. Hilditch*, 584 P.2d 376, 377 (Or. Ct. App. 1978) (holding a denial by law enforcement of a reasonable opportunity to obtain an independent test is neither a "failure" nor an "inability" to do so and therefore suppressing evidence); *City of Blaine v. Suess*, 612 P.2d 789, 791 (Wash. 1980) (concluding new trial could not remedy law enforcement's denial of suspect's requested independent test and therefore remanding for dismissal).

The weight of persuasive authority favors interpreting our statute to require suppression of the test directed by law enforcement when law enforcement denies a detainee his or her statutory right to an independent chemical test. According to these authorities, the statutory terms "failure" and "inability" do not contemplate an officer's denying a detainee's statutory right to an independent chemical test. *See State v. Durkee*, 584 So. 2d 1080, 1082–83 (Fla. Dist. Ct. App. 1991) (concluding the statutory terms should not be understood to encompass the law enforcement official's wrongdoing); *accord Unruh*, 669 So. 2d at 245. We do not believe the legislature, in using the statutory terms "failure or inability," intended to require admission of the officer's requested test in cases where the officer denied the detainee a statutory right granted by the legislature.

There are also other reasons to suppress the results of the Breathalyzer test. Not suppressing law enforcement's Breathalyzer results would permit officers to deny with impunity a detainee's request for an independent chemical test. As was recognized in *Casper*, not

suppressing the results "would render meaningless" the detainee's statutory right to an independent chemical test. 506 N.W.2d at 802; *see also Hilditch*, 584 P.2d at 377 (making a similar observation and also noting it "would allow the police to profit from their own misconduct in preventing an arrestee from obtaining such a test"). We do not believe the legislature intended to grant detainees a right while permitting officers to deny the right without any evidentiary consequence.

In addition, this remedy is consistent with the remedy ordered when the detainee's statutory right under Iowa Code section 804.20 is denied. Under that statute, suppression of the results of the test obtained by law enforcement is the remedy when a detainee's right to make a telephone call is violated. *See State v. McAteer*, 290 N.W.2d 924, 925 (Iowa 1980) (affirming a district court's suppression of breath test results when a detainee was denied her right to call a family member); *State v. Vietor*, 261 N.W.2d 828, 832 (Iowa 1978) (holding when a detainee's request to call a lawyer is denied "evidence of his refusal to take a chemical test shall be inadmissible at a later criminal trial"). For all these reasons, we hold "evidence of the results of the test or tests administered at the direction of the peace officer" must be suppressed when a detainee's statutory right to an independent test under Iowa Code section 321J.11 is denied. Iowa Code § 321.11. Accordingly, the district court erred by denying Lukins's motion to suppress the Breathalyzer results obtained by Rohrbaugh.

**C. Harmless Error.** The State contends it was harmless error not to suppress Lukins's Breathalyzer results. "In cases of nonconstitutional error, reversal is required if it appears the complaining party has suffered a miscarriage of justice or his rights have been injuriously affected."

*Moorehead,* 699 N.W.2d at 672. Prejudice is presumed "unless the record affirmatively establishes otherwise." *Id.* at 673.

The State contends the remaining evidence proved Lukins was guilty of driving under the influence. He ran a stop sign, sped away from the pursuing officer, and careened into a ditch. He smelled strongly of alcohol, had slurred speech, and admitted drinking at a bar, though Lukins said he drank just six beers. He also fell down into the ditch beside the road while waiting for Rohrbaugh to remove items from the passenger seat of the police squad car. According to the State, this evidence is sufficient to affirm Lukins's conviction, despite admission of the Breathalyzer results.

The problem with the State's argument is twofold. First, Lukins was charged with operating a motor vehicle either "[w]hile under the influence of an alcoholic beverage or other drug or combination of such substances," Iowa Code § 321J.2(1)(*a*), or "[w]hile having an alcohol concentration of .08 or more," *id.* § 321J.2(1)(*b*). The district court's verdict, however, did not indicate under which provision it determined Lukins was guilty. We have held that when there are multiple bases for guilt, one of which is erroneous, we must reverse if the jury's verdict does not indicate which basis was accepted. *See State v. Smith,* 739 N.W.2d 289, 295 (Iowa 2007) (reversing convictions "because the general verdict returned by the jury did not reveal the basis for its guilty verdict"); *State v. Heemstra,* 721 N.W.2d 549, 559 (Iowa 2006) ("Because we have no indication as to which basis of guilt the jury accepted, we must reverse and remand for a new trial."). Thus, even if we assumed the evidence highlighted by the State supports Lukins's conviction for operating while intoxicated on the basis he was under the influence of alcohol or drugs, and Lukins had been convicted by a jury, remand would be required

because the verdict did not reveal its basis. *See Smith*, 739 N.W.2d at 295 ("A verdict based on facts only legally supporting one theory for a conviction will not negate the possibility that the defendant was convicted under a theory containing legal error.").

However, Lukins was convicted after a bench trial on the minutes of testimony, which ordinarily means "we have a written exposition of the fact finder's reasoning in the verdict." *Moorehead*, 699 N.W.2d at 673. Nevertheless, the district court's order finding Lukins guilty of operating while intoxicated, second offense, is devoid of fact findings. We have explained that where, as here, a defendant stipulates to a bench trial on the minutes of testimony, the district court must, among other things, " 'find the facts specially and on the record,' separately state its conclusion[s] of law, and render an appropriate verdict as required by Iowa Rule of Criminal Procedure [2.17(2)]". *State v. Sayre,* 566 N.W.2d 193, 196 (Iowa 1997) (citing Iowa R. Crim. P. 16(2) (now Iowa R. Crim. P. 2.17(2))). Without these findings of fact, we have no way of determining what facts the district court relied upon to find Lukins guilty of operating while intoxicated. *Cf. Moorehead*, 699 N.W.2d at 673 (reviewing the district court's fact findings to determine district court's reasoning underlying its verdict). The district court may have relied on the erroneously admitted test results, or it may have relied on all the other circumstances suggesting Lukins was operating while intoxicated. The district court's order is unclear. Under the circumstances, we must reverse and remand.

## IV. Conclusion.

An officer is under no obligation to inform a detainee of his or her statutory right to an independent chemical test. *Wootten*, 577 N.W.2d at 655. But any statements that can be reasonably construed as a request

for an independent chemical test are adequate to invoke the detainee's right to an independent test under Iowa Code section 321J.11. Upon the detainee's invocation of the right, the officer must inform the detainee of his or her right according to the terms of Iowa Code section 321J.11. As this was not done in this case, Lukins's statutory right to an independent test was violated. Violation of this right requires suppression of the test results obtained by law enforcement. The district court therefore erred in denying Lukins's motion to suppress. Since we cannot determine what basis of guilt was used for the district court's verdict, we reverse and remand for a new trial.

**DECISION OF COURT OF APPEALS AFFIRMED; JUDGMENT OF DISTRICT COURT REVERSED AND CASE REMANDED.**

All justices concur except Waterman, J., Cady, C.J., and Mansfield, J., who dissent.

**WATERMAN**, **Justice (dissenting).**

I respectfully dissent because the majority erroneously requires suppression of a perfectly valid breath test that showed Lukins's blood alcohol level was more than two and one-half times the legal limit. The majority does so to remedy a violation that did not occur. Lukins never asked for an independent chemical test; rather, he merely requested a second Breathalyzer test. As the majority acknowledges, Lukins had no statutory right to repeat the breath test.

To the extent Lukins's initial question was ambiguous ("Can I get a re-check, or anything?"), the police chief, Rohrbaugh, clarified what Lukins wanted by specifically asking him, "You want your blood checked?" Lukins answered, "No, can I get a re-check?" Rohrbaugh tapped the Datamaster Breathalyzer and said, "A re-check of this?" Lukins responded, "Yeah." They continued discussing Lukins's request to repeat the breath test. Lukins never asked for a different test to measure his intoxication. I disagree with the majority's conclusion that Lukins's statements "can be reasonably construed as a request for an independent chemical test . . . adequate to invoke the detainee's right to an independent test under Iowa Code section 321J.11." To the contrary, Lukins affirmatively rejected the offer of a blood test and never asked for a urine test or any other form of test. Lukins made clear what he wanted was another breath test. It is factually inaccurate to conclude he invoked his right to an independent test. He did no such thing.

The district court reviewed the booking video and, applying the same test as today's majority, determined correctly that Lukins never invoked his right to independent testing:

Defendant's statements and inquires cannot reasonably be construed as a request for an independent chemical test. A review of the booking recording in its entirety shows that it was the Defendant's desire to have a second chance to provide a breath sample on the Datamaster machine at the jail facility. Neither Iowa Code section 321J.11 nor any other statutory provision grants a Defendant a right to a second test on law enforcement's Datamaster machine. In fact, during one part of the conversation, the officer asked Defendant whether he was requesting a blood test, and the Defendant responded in the negative stating "no, can I get a *re-check*." While the Defendant did ask for a "re-check" or a "re-blow" on multiple occasions, the quantity of those requests does not change their nature or the officer's duties. The court construes each as a request for a second test on the Datamaster thereby not implicating Section 321J.11. This conclusion is further supported by the Defendant's request to the jailer, once the arresting officer has left the scene, of "can I get a re-[B]reathalyzer test by the way."

I would affirm the district court.

After today, any request to retake the breath test will require disclosure of the independent chemical test options for blood or urine under section 321J.11 (2011). This is a new disclosure requirement, at odds with our precedent applying that statute. We have construed section 321J.11 narrowly, concluding a detainee has a right to an independent test *only after* the detainee successfully completes the test requested by an officer. *See State v. Bloomer*, 618 N.W.2d 550, 553 (Iowa 2000). In *Bloomer*, the defendant asked for a urine test without consenting to the breath test. *Id.* He had no right to the urine test without taking the breath test. *Id.* We plainly stated officers are not required to advise a detainee of the option under section 321J.11 to an independent test when presented with such a request. *Id.* ("The officer . . . was not required to convey that information."). Similarly, here, all Lukins did was ask to retake the breath test, which he was not entitled to retake. Under *Bloomer*, the officer could deny Lukins's improper request without further disclosing what other testing options were

available to him. The majority departs from *Bloomer*, giving section 321J.11 an expansive interpretation by requiring additional disclosures. I would adhere to stare decisis, rather than effectively overruling *Bloomer*. *See State v. Walker*, 804 N.W.2d 284, 296 (2011) ("Stare decisis is a valuable legal doctrine which lends stability to the law . . . ." (internal quotation marks omitted)).

The majority relies on our decisions applying Iowa Code section 804.20, the statute governing a detainee's right to call a lawyer or family member. *See id.* at 290 (discussing purpose of section 804.20). We have never previously equated the disclosure requirements under these separate statutes. I would not start now. Cases under section 804.20 are inapposite because that statute helps protect a detainee's constitutional right to counsel and privilege against self-incrimination. *See id.* at 294–95. By contrast, section 321J.11 does not implicate either of those constitutional rights but, rather, merely provides a statutory right to an independent chemical test:

> The person may have an independent chemical test or tests administered at the person's own expense in addition to any administered at the direction of a peace officer. *The failure or inability of the person to obtain an independent chemical test or tests does not preclude the admission of evidence of the results of the test or tests administered at the direction of the peace officer.*

Iowa Code § 321J.11 (emphasis added). The legislature thereby specified that the breath test results remain admissible notwithstanding the "failure or inability of the person to obtain an independent chemical test." *Id.* The majority overrides that command from our elected branches by suppressing Lukins's breath test results. Suppression is the right remedy under section 804.20, not here.

Today's decision creates uncertainty. If, in hindsight, what Lukins said is enough to trigger a new consent advisory about testing options, any number of scenarios when detainees question test results could lead to suppression of otherwise valid breath tests. We have emphasized the need for clear rules when citizens suspected of drunk driving are detained for testing under Iowa's statutory implied consent procedures:

> [A] bright-line rule has the advantage of providing clear guidance to law enforcement personnel. Clarity as to what the law requires is generally a good thing. It is especially beneficial when the law governs interactions between the police and citizens. Law enforcement officials have to make many quick decisions as to what the law requires where the stakes are high, involving public safety on one side of the ledger and individual rights on the other. A clear, teachable rule is a high priority. [A] flexible approach, by contrast, is likely to lead to uncertainty in particular cases.

*Welch v. Iowa Dep't of Transp.*, 801 N.W.2d 590, 601 (Iowa 2011).

In *Welch*, a motorist who initially refused the Breathalyzer test changed his mind eleven minutes later and asked to take the test. *Id.* at 592–93. The police refused. *Id.* at 593. Our court affirmed the revocation of his license. *Id.* at 602. We unanimously held "a motorist's request to take the chemical test need not be honored after he or she has previously refused that test following a valid implied consent advisory." *Id.* We noted "Iowa's existing, clearcut 'one refusal' rule reduces the time and cost burdens on law enforcement." *Id.* at 601. The rule as applied in today's majority's opinion is anything but clearcut. Rather, I predict case-by-case adjudication over whether particular comments by intoxicated detainees constitute a request for independent testing.

This uncertainty, and the resulting suppression of otherwise valid breath test results, will undermine the purpose of chapter 321J—public safety.

> In construing various provisions of chapter 321J, we have continuously affirmed that the primary objective of the implied consent statute is the removal of dangerous and intoxicated drivers from Iowa's roadways in order to safeguard the traveling public. *See, e.g., Severson v. Sueppel*, 260 Iowa 1169, 1174, 152 N.W.2d 281, 284 (Iowa 1967) ("It is obvious the purpose of the Implied Consent Law is to reduce the holocaust on our highways part of which is due to the driver who imbibes too freely of intoxicating liquor."); *Shriver v. Iowa Dep't of Transp.*, 430 N.W.2d 921, 924 (Iowa 1988) (reiterating that the primary purpose behind chapter 321J is to "promote the public safety by removing dangerous drivers from the highways").

*Id.* at 594. I would interpret the requirements of section 321J.11 to further the goal of public safety.

The legislature has specified in great detail the disclosures peace officers are required to make to motorists suspected of drunk driving. *See* Iowa Code § 321J.8 (implied-consent advisory). Officers are welcome to voluntarily disclose additional information to motorists, but it is not our place as a court to require them to do so, on pain of suppression of compelling evidence of intoxication.

For these reasons, I am unable to join the majority.

Cady, C.J., and Mansfield, J., join this dissent.