**IN THE COURT OF APPEALS OF IOWA**

No. 16-2177
Filed January 24, 2018

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JEFFREY JOHN MYERS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Floyd County, Peter B. Newell, District Associate Judge.

Jeffrey John Myers appeals his conviction for operating while intoxicated, first offense. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**VAITHESWARAN, Presiding Judge.**

A Charles City police officer stopped a vehicle for having unilluminated taillights. He observed signs of intoxication in driver Jeffrey John Myers. After administering field sobriety tests, the officer arrested Myers for operating a motor vehicle while under the influence. Myers consented to a urine test, which screened positive for marijuana metabolites and amphetamine.

The State charged Myers with operating a motor vehicle while intoxicated (first offense) in violation of Iowa Code section 321J.2(1)(a) and (c) (2016).[1] Myers moved to suppress the evidence on the ground that his taillights were actually illuminated. He asserted the stop violated his constitutional rights against unreasonable searches and seizures. *See State v. Pettijohn*, 899 N.W.2d 1, 14 (Iowa 2017) (citing the guarantees of the Fourth Amendment to the United States Constitution and Article I, section 8 of the Iowa Constitution to be secure from "unreasonable searches and seizures"). Following an evidentiary hearing, the district court denied the motion.

Myers stipulated to a bench trial on the minutes of testimony. The district court found him guilty of "all the elements of operating under the influence, first offense." In its judgment and sentence, the court convicted Myers under Iowa Code section 321J.2(1)(a) and (b), but oral comments during the trial on the minutes of evidence clarified the conviction was based on section 321J.(1)(a) and (c).

---

[1] Although the State did not identify these code provisions, the language in the trial information tracked the language of these provisions.

On appeal, Myers contends (1) the district court should have denied his motion to suppress evidence gained following the stop and (2) the evidence was insufficient to establish the presence of a controlled substance in his system.

## I.   *Suppression Ruling*

"When a peace officer observes a traffic offense, however minor, the officer has probable cause to stop the driver of the vehicle." *State v. Harrison*, 846 N.W.2d 362, 365 (Iowa 2014) (quoting *State v. Mitchell*, 498 N.W.2d 691, 693 (Iowa 1993)).   The police officer observed Myers driving after dark with unilluminated taillights.   *See* Iowa Code § 321.387.[2]   He approached Myers' vehicle and "explained he didn't have any taillights."   According to the officer, Myers "was like, oh, and then reached down and turned them on."   When the officer was asked if "they [were] on to begin with and then brightened," he responded, "No, they weren't on."   The officer explained that on some "newer cars," "you actually have to adjust [the taillights]."

A dash camera video corroborated the officer's observation.   Although headlights of the law enforcement vehicle initially obscured the visibility of Myers' taillights, the taillights noticeably illuminated after the officer informed Myers of the infraction.   The illumination coincided with a movement by Myers to the right.   On our de novo review of this constitutional issue, we agree with the district court that the officer had probable cause to stop the vehicle.   We affirm the court's denial of Myers' suppression motion.

---

[2] Section 321.387 states: "Every motor vehicle and every vehicle which is being drawn at the end of a train of vehicles shall be equipped with a lighted rear lamp or lamps, exhibiting a red light plainly visible from a distance of five hundred feet to the rear."

## II.    *Sufficiency of the Evidence*

As noted, Myers stipulated to a trial on the minutes of evidence.  The minutes included a toxicology report, which stated:

> A positive screen indicates the *possible* presence of a substance and/or metabolites at a level that meets or exceeds the levels established by the Iowa Administrative Code 661-157.7 (321J).
> . . . .
> Report(s) on positive screens to confirm the presence of specific drugs or metabolites will follow.

(Emphasis added.)  No confirming reports followed.

Myers argues the evidence was insufficient to support his conviction under section 321J.2(1)(c).  Myers focuses on section (1)(c) alone because, in his view, the State chose "to marshal an offense only under section 321J.2(1)(c) and this alternative "controls when evaluating the sufficiency of the evidence."

The district court did not view the State's presentation so narrowly.  The court entered judgment on two alternatives and, at the trial on the minutes, recited the State's burden under both section 321J.2(1)(c) and (a).  Specifically, the court said the State would have to prove Myers "had a detectable level of a controlled substance in [his] blood stream" [321J.2(1)(c)] and the State "could also prove [he was] under the influence of something" [321J.2(1)(a)].  *Cf. State v. Lukins*, 846 N.W.2d 902, 912 (Iowa 2014) (reversing a conviction following a bench trial on the minutes of testimony where the district court's order was "devoid of fact findings" and "unclear").  Because the court considered both provisions, we will address both.

Iowa Code section 321J.2(1)(c) states, "A person commits the offense of operating while intoxicated if the person operates a motor vehicle in this state . . . [w]hile any amount of a controlled substance is present in the person, as measured in the person's blood or urine."  Myers admits he screened positive for marijuana metabolites and amphetamine in an initial screening test but argues confirmatory testing was required before the amounts could truly be deemed positive.  In his view, "possible presence [of drugs] does not establish actual presence."

Myers' argument is appealing at first blush.  But the Iowa Supreme Court recently considered a "drug screen detect[ing] a nonimpairing metabolite" and reaffirmed that the statutory "any amount" language "means any amount greater than zero."  *State v. Childs*, 898 N.W.2d 177, 178-79 (Iowa 2017) (quoting *State v. Comried*, 693 N.W.2d 773, 778 (Iowa 2005)).  The court made no mention of a confirmatory test, noting only that the defendant "consented to a urine test, which revealed the presence of sixty-two nanograms per milliliter of a nonimpairing metabolit of marijuana."  *Id.* at 179.  By all indications, then, the test in *Childs* was an initial screening test.

As in *Childs*, the amounts detected in Myers' initial screening results exceeded the standards adopted by the Iowa Department of Public Safety "for determining detectable levels of controlled substances in the division of criminal investigation criminalistics laboratory initial screening."  *See* Iowa Admin. Code r. 661-157.7; *cf. Comried*, 693 N.W.2d at 777 (rejecting the defendant's argument that a regulation "setting cutoff levels for initial screening tests for drugs in urine samples" modified the definition of "any" in Iowa Code section 321J.2(1)(c) because "the [department of public safety], by referring to the federal regulations,

only intended its regulation's cutoff levels to apply to initial testing of urine" and, "[i]n Comried's case, the test confirming the presence of methamphetamine was not an initial screening, but a confirmatory test"). The "positive" urine test amounted to substantial evidence in support of a finding of guilt under section 321J.2(1)(c). *See State v. Lane*, 743 N.W.2d 178, 181 (Iowa 2007) (reviewing sufficiency of the evidence challenge for substantial evidence and stating we are obligated to view the evidence in the light most favorable to the State).

We turn to section 321J.2(1)(a). This provision requires proof Myers was operating a motor vehicle "[w]hile under the influence of an alcoholic beverage or other drug." The minutes of evidence disclose circumstantial evidence of a controlled substance in Myers' body. The officer who stopped the vehicle opined, "I got the impression that he was under some type of controlled substance." He conveyed his impression to Myers, who acknowledged he had used narcotics in the past. The officer documented the following indicators of Myers' current substance use: (1) his voice was "very shaky"; (2) he was "sweating profusely"; (3) his eyes were "watery and bloodshot"; (4) his pupils dilated only slightly when the flashlight was near his eyes; (5) the rear of his tongue was brownish green; (6) he performed poorly on field sobriety tests; (7) he was sluggish; (8) he was uncoordinated; and (9) he was sensitive to light. The cited evidence constitutes substantial evidence in support of the district court's finding of guilt under section 321J.2(1)(a).

We affirm Myers' conviction for operating while intoxicated, first offense.

**AFFIRMED.**