# IN THE SUPREME COURT OF IOWA

No. 19–0849

Submitted October 15, 2020—Filed November 20, 2020

**STATE OF IOWA,**

    Appellee,

vs.

**THOMAS CHRISTOPHOR CASPER,**

    Appellant.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Cerro Gordo County, Adam D. Sauer, District Associate Judge.

A defendant seeks further review of a court of appeals decision affirming the denial of his motion to suppress based on a claimed violation of Iowa Code section 321J.11(2). **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

Mansfield, J., delivered the opinion of the court, in which all justices joined.

Scott A. Michels (argued) of Gourley, Rehkemper & Lindholm, P.L.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, Louis S. Sloven (argued), Assistant Attorney General, Carlyle D. Dalen, County Attorney, and Brendon D. Moe, Assistant County Attorney, for appellee.

**MANSFIELD, Justice.**

This appeal requires us to determine if a peace officer violates a duty under Iowa Code section 321J.11(2) (2018) when the officer agrees to the detainee's request for a retest on the machine that has already tested the detainee's blood alcohol level, without *also* informing the detainee of the statutory right to an independent test at the detainee's expense. We conclude the officer has not violated section 321J.11(2) in these circumstances. The statute provides an independent right to a retest but generally does not require the officer to inform the detainee of that right. Therefore, in our view, the officer must inform the detainee of the right to an independent test only in circumstances when the detainee has reasonably asked about that right or a failure to disclose that right could be misleading. Neither of those circumstances were present in this case. Accordingly, on further review, we affirm the denial of the detainee's motion to suppress, his conviction and sentence, and the decision of the court of appeals.

## I. Facts and Procedural History.

On August 11, 2018, shortly after midnight, Iowa State Patrol Trooper Nathan Snieder stopped Thomas Casper for speeding on a highway in Cerro Gordo County while riding his motorcycle. The traffic stop was initiated after a radar check clocked Casper traveling at 110 miles per hour.[1] While conducting the traffic stop, Trooper Snieder noticed that Casper had bloodshot and watery eyes, was unsteady on his feet, and spoke with a slur and thick tongue. After placing Casper in the front passenger seat of the patrol vehicle, Trooper Snieder could smell the odor

---

[1]The posted speed limit at the location of the stop was 55 miles per hour.

of an alcoholic beverage. Trooper Snieder's observations were confirmed when Casper admitted that he had had a couple of alcoholic beverages.

Trooper Snieder then administered the "horizontal gaze nystagmus" field sobriety test. During the test, all clues indicated that Casper was clearly intoxicated. Casper did not take the remaining field sobriety tests because of prior leg injuries. As an alternative, Casper volunteered to run ten miles, stating that he could do so faster than any millennial and no drunk person would be able to run ten miles. Trooper Snieder advised Casper that a ten-mile run would not be an appropriate field sobriety test. Casper then submitted to a preliminary breath test that indicated he was over the legal limit. At 12:36 a.m., Casper was Mirandized and placed under arrest for operating while intoxicated (OWI), speeding, and failure to provide proof of insurance.

Casper's wife arrived at the scene, took responsibility for the motorcycle, and was informed by Trooper Snieder that Casper was being taken to the Cerro Gordo County Jail. At the jail, at approximately 1:09 a.m., Trooper Snider read Casper an implied consent advisory. Casper followed along with a copy that was provided to him. Casper was offered and declined the opportunity to make any phone calls. He confirmed that he understood by checking the box on the form he would be consenting to provide a breath specimen for testing. At 1:19 a.m., Casper provided a breath sample for the Datamaster. The Datamaster indicated Casper had a blood alcohol content of .113%. After the test was conducted, Casper answered questions for a standardized OWI interview. During the interview, Casper stated that he "had drank six bottles of tequila since the accident."

Casper showed emotional mood swings while with Trooper Snieder. He was mad, happy, talkative, abrasive, and indifferent. After the

interview, Casper was turned over to jail personnel for processing and booking.

Casper bonded out of jail, and his wife picked him up. While he was leaving through the building entrance with jail personnel at approximately 2:15 a.m., Casper asked Trooper Snieder if he could "take another test from the Datamaster." Trooper Snieder said, "Sure." Trooper Snieder explained that he needed Casper's driver's license (which Casper had in his hand) so that he could reenter the information in the Datamaster. At that point, Casper changed his mind and said, "No, no, I don't want to." Capser passed through the entrance with the jail personnel and left.

Trooper Snieder did not advise Casper at that time that he could get an independent test done at his expense.

On September 25, the State filed a trial information charging Casper with OWI first offense in violation of Iowa Code section 321J.2. On November 7, Casper moved to suppress the results of the Datamaster test. Casper's motion to suppress argued that Trooper Snieder had violated section 321J.11 by failing to alert Casper of his right to have independent chemical testing after Casper had requested a second Datamaster test. Following an evidentiary hearing, the district court denied Casper's motion to suppress.

Thereafter, Casper waived his right to a jury trial and agreed to a stipulated trial on the minutes of testimony. On April 19, 2019, the court entered a written ruling finding Casper guilty. The ruling concluded that Casper, when operating his motorcycle, both was "under the influence of an alcoholic beverage" and had "alcohol concentration of .08 or more." Iowa Code § 321J.2(1)(*a*), (*b*). Casper was sentenced to serve two days in jail and ordered to pay a $1250 fine plus surcharges. *See id.* § 321J.2(3)(*a*), (*c*).

6

Casper appealed. He reprised his argument that Trooper Snieder violated his duty to advise him of his statutory entitlement to an independent chemical test at his own expense. We transferred the case to the court of appeals. The court of appeals affirmed Casper's conviction without reaching the suppression issue. Instead, it found that any failure to suppress the Datamaster test results was harmless error because the district court's ruling finding Casper guilty based on the "under the influence" alternative was supported by substantial evidence and that portion of the ruling did not mention the Datamaster result.

Casper applied for further review, and we granted his application.

## II. Standard of Review.

Our review of the district court's ruling on the motion to suppress is for the correction of legal error because the basis for the motion is statutory. *State v. Smith*, 926 N.W.2d 760, 762 (Iowa 2019). The district court denied Casper's motion to suppress evidence based on its interpretation of Iowa Code section 321J.11. We review for correction of errors at law a district court's ruling on a motion to suppress based on that statute. *State v. Lukins*, 846 N.W.2d 902, 906 (Iowa 2014).

## III. Legal Analysis.

Iowa Code section 321J.11(2) provides, "The person may have an independent chemical test or tests administered at the person's own expense in addition to any administered at the direction of a peace officer." Casper claims that his rights under this statute were violated when he was not told about its existence.

In a sense, this case is the sequel to another case we decided six years ago involving section 321J.11(2). *See Lukins*, 846 N.W.2d 902. In *State v. Lukins*, the defendant registered at .207% on the Datamaster breath test. *Id.* at 904. He then made repeated inquiries asking if he could

get a "re-check," a "re-blow," or a "re-breathalyzer." *Id.* at 904–05. The officer refused all requests responding with a combination of "no" and "It isn't going to be any different." *Id.* at 905. At no point was Lukins told about the right to an independent chemical test. *Id.*

Before the trial, Lukins moved to suppress the results of the Breathalyzer test. *Id.* at 905. The district court denied the motion, reasoning that "based on the video recording that [the defendant's] requests could not reasonably be construed as requesting an independent test." *Id.* at 906. The district court "concluded Lukins requested a second test using the Breathalyzer machine." *Id.*

On appeal, though, we upheld the court of appeals' reversal of the district court's decision. *Id.* at 904. We first summarized the rather prolific caselaw under Iowa Code section 804.20 involving a detainee's right to call, consult with, and see a family member or attorney. *Id.* at 907–08. Like section 321J.11(2), section 804.20 does not itself require that a peace officer advise the detainee of the detainee's rights under the statute. *Id.* at 908. Yet we noted that under the section 804.20 precedents,

> [I]f the detainee suggests calling someone outside the scope of individuals authorized by the statute, the peace officer, who knows the statutory scope, must clarify to the detainee the scope of individuals to whom a telephone call may be made under Iowa Code section 804.20.

*Id.*

We then indicated that a similar approach should be applied to Iowa Code section 321J.11(2). *Id.* "It is clear that a detainee may be similarly unaware of his or her rights under Iowa Code section 321J.11." *Id.*

> The similarity of circumstances between the detainee's knowledge of his or [her] statutory right to a telephone call and his or her statutory right to an independent chemical

test indicate the standard for invoking the right should be similar as well.

*Id.* We elaborated,

> [As] under Iowa Code section 804.20, any statement that can be reasonably construed as a request for an independent chemical test is adequate to invoke the detainee's right to such a test under Iowa Code section 321J.11. . . . [A]n officer who fields a legally imprecise request for an independent test cannot stand mute and deny the request. Rather, if an imprecise statement, reasonably construed, implicates the statute, then the officer should inform the detainee of his or her right to an independent chemical test under Iowa Code section 321J.11.

*Id.* at 909 (citation omitted).

We then concluded that "[Lukins's] statements, reasonably construed, indicated he wanted another test, even if he was mistaken, unsure, or unaware of the way in which the additional test would be conducted." *Id.* Therefore, the officer "should have informed Lukins that he was entitled to an independent chemical test at his 'own expense in addition to' the Breathalyzer test." *Id.* at 910 (quoting Iowa Code § 321J.11(2) (2011)). Because the officer did not do so, "he violated Lukins's statutory right to an independent chemical test." *Id.*

The State argues that *Lukins* is distinguishable because law enforcement here agreed to provide the defendant exactly what he wanted; in *Lukins*, law enforcement said no. We agree. A defendant who asks for something law enforcement refuses should be informed of similar alternatives that would be available. But we fail to see why a defendant whose request is *granted* needs to be informed of other alternatives.

Because Iowa Code section 321J.11(2) does not require the detainee to be informed of the right to an independent test, *see Lukins*, 846 N.W.2d at 908; *State v. Wootten*, 577 N.W.2d 654, 655 (Iowa 1998), the guiding principle is one of fairness, not disclosure. It is arguably misleading and

unfair to say no to a detainee who asks for a certain type of retest without telling the detainee that he or she can have a different type of retest. But it is not misleading or unfair to give the detainee exactly the type of retest the detainee asks for.[2]

A refusal to allow a retest on law enforcement's Datamaster—without more—can imply that no test of any kind would be permissible. An agreement to allow a retest on law enforcement's Datamaster carries no such implication. If Casper preferred an independent test, he could have asked for that. Or he and his wife could have arranged such a test, since he was in the process of walking out the door of the jail when he made his request of Trooper Snieder for a retest on the Cerro Gordo County Datamaster. In short, we have no basis on this factual record to conclude that Casper's interest in an *independent* retest from another source would have been any greater than that of someone who said nothing while walking out of the jail. For these reasons, the district court did not err in denying Casper's motion to suppress.

Because we resolve Casper's appeal on this basis, we do not reach the State's alternative arguments that any request for independent testing at 2:15 a.m. on August 11 would have been untimely, *see Wootten*, 577

---

[2]*Ginsberg v. Iowa Department of Transportation*, also involved an unexplained denial of a request for other testing:

> Ginsberg said that he was not refusing to take the breath test but that he wanted his blood or urine tested as well. The officers treated this as a refusal. The peace officers did not explain that on the completion of the requested test, Ginsberg would be allowed to exercise his right to independent testing.

508 N.W.2d 663, 664 (Iowa 1993) (per curiam). There we upheld a district court order overturning the agency's decision to revoke Ginsberg's driver's license. *Id.* By contrast, in *State v. Smith*, we found no violation of Iowa Code section 321J.11(2) where the defendant "only made declarative statements regarding what would happen if he refused to provide a breath test[ and a]t no point inquire[d] about his right to obtain independent testing." 926 N.W.2d at 762–63. We added, "Statements regarding chemical testing in lieu of the officer's testing are insufficient to invoke section 321J.11." *Id.* at 763.

N.W.2d at 656, or that any wrongful admission of the chemical test result would have been harmless error, *see State v. Garrity*, 765 N.W.2d 592, 597–98 (Iowa 2009).

### IV. Conclusion.

For the foregoing reasons, we affirm Casper's conviction and sentence and the decision of the court of appeals.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**