# IN THE SUPREME COURT OF IOWA

No. 09–1246

Filed November 24, 2010

**STATE OF IOWA,**

Appellee,

vs.

**SCOTT ALLEN HICKS,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Jackson County, David H. Sivright, Jr., Judge.

Appellant seeks review of court of appeals' decision to affirm the district court's denial of appellant's motion to suppress. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED WITH INSTRUCTIONS.**

David A. Lemanski, Dubuque, for appellant.

Thomas J. Miller, Attorney General, Jean Pettinger, Assistant Attorney General, and Christopher M. Raker, County Attorney, for appellee.

**BAKER, Justice.**

Appellant seeks further review of court of appeals' decision to affirm the district court's denial of appellant's motion to suppress. The appellant sought to suppress evidence allegedly derived from an unconstitutional stop and evidence purportedly obtained after law enforcement denied appellant his right to call a family member as guaranteed by Iowa Code section 804.20 (2007). We find the district court correctly determined the detaining officer's stop of the petitioner to have been permissible, but the district court erred in holding that the appellant was afforded his section 804.20 rights. The decision of the court of appeals is vacated, the district court's judgment is reversed, and the case is remanded with instructions.

## I. Background Facts and Proceedings.

Sergeant Kennie Sparks of the Maquoketa Police Department was on patrol in an unmarked police car during the early morning hours of August 23, 2008. Sparks observed a car weaving in his rearview mirror. The car was quickly approaching the rear of the officer's car. Sparks pulled over to allow the car to pass and then began to follow the car. While following the car, Sparks attempted to drive at the same speed as the vehicle in front of him, a police tactic known as pacing. The on-board camera displays the squad car's speed pursuant to GPS. While pacing the car, the camera showed the squad car was traveling thirty-four to thirty-six miles per hour. The speed limit was twenty-five miles per hour. In addition, the on-board camera also showed the car weaving and crossing the center of the road. Sparks then pulled the car over.

Appellant, Scott Hicks, was operating the vehicle and was the sole occupant. When making initial contact with Hicks, Sparks detected the odor of beer coming from Hicks's car. Sparks observed Hicks had

bloodshot, watery eyes and slurred speech. Inside the car were two open, half-full beer cans. Sparks asked Hicks to take several tests. Hicks failed the horizontal gaze nystagmus test. Hicks agreed to take the walk-and-turn test; however, after struggling with his initial steps, Hicks refused to complete the test and admitted to Sparks that he had too much to drink. Hicks refused to take the remaining field sobriety tests and subsequently was arrested and transported to the Maquoketa Police Department.

At the processing center, Sparks and Hicks engaged in numerous conversations, many relevant to Hicks's right to communicate with a family member:

> HICKS: Can I call somebody to get me out?
>
> SPARKS: Yeah. I can let you make a call. Who would you like to call?
>
> HICKS: My girlfriend if she's home or my mom?
>
> . . . .
>
> SPARKS: Who would you like to call?
>
> HICKS: Well, who can let me go home?
>
> SPARKS: Who can let you go home? Well, we can't decide that yet.

Officer Sparks then informed Hicks that pursuant to police department policy Hicks would not be released until he passed a breath test. If Hicks refused to submit to a breath test or failed to pass the test, he was informed he would be held until morning and then see the judge.

> HICKS: Can I have somebody called to get me out? Can I have my mom come get me?
>
> SPARKS: Not tonight. I can have you call her. Okay?
>
> HICKS: No. I want somebody to just let me take me home. I'll go to her house. I don't care. I'm not going to drink anymore.
>
> . . . .

HICKS:  I just want to call my mom and have her come get me.  My mom—not my girlfriend—my mom.

SPARKS:  I got to go through all this stuff first.

HICKS:  That's okay.  I'll sign anything you want.

. . . .

Hicks ultimately announced he would no longer like to continue the implied consent process.  Sparks insisted on completing the implied consent form.  After the implied consent process was completed, Hicks again refused chemical testing and engaged in non-relevant conversation.

Hicks was charged with operating while intoxicated, second offense, in violation of Iowa Code section 321J.2(1)(*a*) and (*b*).  Hicks filed a motion to suppress.  First, Hicks alleged Sparks lacked probable cause to pull him over and all evidence subsequent to the improper stop should be suppressed.  Second, Hicks alleged he was denied his statutory right to contact a family member afforded by Iowa Code section 804.20 and all evidence subsequent to his invocation of this statutory right should be suppressed.  The district court denied Hicks's motion to suppress on each issue.  The jury found Hicks guilty of operating while intoxicated, and Hicks stipulated to an earlier operating-while-intoxicated conviction.  Hicks was sentenced to twenty days of incarceration and fined $2500.

Hicks filed a timely notice of appeal.  This appeal was routed to the court of appeals.  The court of appeals affirmed the district court's denial of Hicks's motion to suppress, finding the arresting officer had reasonable suspicion to stop Hicks, and the officer did not violate Iowa Code section 804.20.  We granted Hicks's application for further review.

## II.  Discussion and Analysis.

**A.  Reasonable Grounds for Stop.**  Hicks argues Sparks did not have probable cause to stop his car, and therefore the district court

should have granted his motion to suppress evidence resulting from this improper stop. Because Hicks's argument as to the validity of his stop raises a constitutional issue, our review is de novo. *State v. Kinkead*, 570 N.W.2d 97, 99 (Iowa 1997).

To conduct an investigatory stop an officer must have a reasonable suspicion that criminal activity has occurred or is occurring. *Id.* at 100 (citing *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889, 906 (1968)). "[T]he State must show by a preponderance of the evidence that the stopping officer had specific and articulable facts, which taken together with rational inferences from those facts, to reasonably believe criminal activity may have occurred." *State v. Tague*, 676 N.W.2d 197, 204 (Iowa 2004). Reasonable suspicion is evaluated in light of the totality of circumstances facing the officer at the time of the stop. *Id.*

The record contains evidence that creates a rational inference to believe Hicks may have been engaging in criminal activity. First, Sparks observed Hicks's car swerving in Sparks's rearview mirror. Then, after allowing Hicks to pass, Sparks observed Hicks's car cross over the center of the roadway into an unmarked lane for oncoming traffic. The on-board camera corroborates Sparks's observation. Second, the on-board camera shows that Sparks's squad car was traveling between thirty-four to thirty-six miles per hours in a twenty-five miles-per-hour speed zone while Sparks was pacing Hicks's car. The defendant challenges the validity of the pacing technique and the calibration of the GPS system; however, Sparks's pacing and the GPS speed allows for a rational inference that Hicks was traveling in excess of the twenty-five miles-per-hour speed limit. *See State v. Bedwell*, 417 N.W.2d 66, 70 (Iowa 1987) (holding that an officer's use of pacing was sufficient to permit a jury to

conclude the defendant traveled in excess of the twenty-five miles-per-hour speed limit). We find the record shows that Sparks had a reasonable suspicion to stop Hicks; therefore, the district court properly denied Hicks's motion to suppress on this issue.

**B. Statutory Right to Call a Family Member.** We review the district court's interpretation of section 804.20 for errors at law. *State v. Moorehead,* 699 N.W.2d 667, 671 (Iowa 2005). If the district court correctly applied the law, we then determine whether there is substantial evidence to support the court's findings of fact. *Id.*

Hicks argues he was denied his statutory right guaranteed by Iowa Code section 804.20 to call a family member once detained by a police officer. Iowa Code section 804.20 states:

> Any peace officer or other person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both. Such person shall be permitted to make a reasonable number of telephone calls as may be required to secure an attorney.

The right to call a family member is equally important as the right to call counsel. *State v. McAteer,* 290 N.W.2d 924, 925 (Iowa 1980). The statute does not require a police officer to affirmatively inform the detainee of his statutory right; however, the peace officer cannot deny the right exits. *Moorehead,* 699 N.W.2d at 671. The guaranteed right is a limited one and only requires a peace officer to provide the suspect with a reasonable opportunity to contact an attorney or family member. *Bromeland v. Iowa Dep't of Transp.,* 562 N.W.2d 624, 626 (Iowa 1997).

To determine whether Hicks was denied his right to contact a family member under section 804.20, two distinct inquiries are required. First, we must determine whether Hicks invoked his rights under section

804.20. Second, we examine whether Hicks was afforded the rights section 804.20 guarantees. We examine these inquiries in turn.

1. *Invocation of statutory right.* We have evaluated the sufficiency of a suspect's invocation within two frameworks. First, we have examined the clarity of the suspect's request to determine if the suspect invoked his statutory right. *Moorehead*, 699 N.W.2d at 672. In *Moorehead* we held that a suspect invoked his section 804.20 right when the suspect asked a police officer, while detained in the back of a squad car, "[W]ould it be possible for me to talk to my Mom when you call her to come pick [the car] up?" *Id.* at 669. We concluded the suspect's request invoked section 804.20 because "Moorehead *specifically, separately, and unequivocally* requested to talk to his mother." *Id.* at 672 (emphasis added). Second, we have suggested invocation turns, in part, upon the suspect's subjective purpose for requesting the phone call when we stated "[w]e objectively consider the statements and conduct of the arrestee and peace officer, as well as the surrounding circumstances . . . in determining if a *good faith request for counsel* has been made." *Ferguson v. Iowa Dep't of Transp.*, 424 N.W.2d 464, 466 (Iowa 1988) (emphasis added).

Addressing the clarity language first, we note that invocation of a suspect's right to counsel under the Sixth Amendment of the United States Constitution currently turns upon the clarity of the suspect's request. *Davis v. United States*, 512 U.S. 452, 459, 114 S. Ct. 2350, 2355, 129 L. Ed. 2d 362, 371 (1994). *Davis* requires the suspect to make an unequivocal or unambiguous request for counsel to invoke his Sixth Amendment right. *Id.* *Davis* and its progeny sparked fervent debate amongst the Supreme Court and scholars as to whether a suspect's right to counsel should turn on unequivocal requests for

counsel. *See, e.g., id.* 512 U.S. at 469–70, 114 S. Ct. at 2360–61, 129 L. Ed. 2d at 378 (Souter, J., concurring in judgment) (arguing the majority penalizes persons that are poor with English, ignorant, or intimidated by police custody and that a clear, as opposed to ambiguous assertion, is not always apparent); Peter M. Tiersma & Lawrence M. Solan, *Cops and Robbers: Selective Literalism in American Criminal Law,* 38 Law & Soc'y Rev. 229, 249, 255 (2004) (arguing *Davis* fails to account for social normative behavior such as politeness, hedging, and deference to authority); *see also State v. Effler,* 769 N.W.2d 880, 896–98 (Iowa) (Appel, J., specially concurring) (expressing doubt that unequivocality should be the touchstone to trigger a constitutional right to counsel and suggested that some other framework might better protect persons' constitutional rights), *cert. denied,* ___ U.S. ___, 130 S. Ct. 1024, 175 L. Ed. 2d 627 (2009). *Moorehead*'s reference to the suspect's "unequivocal" request may be innocuous; nevertheless, it points down a path we are hesitant to follow.

The legislative purpose of section 804.20 is to afford detained suspects the opportunity to communicate with a family member and attorney. *See Vietor,* 261 N.W.2d at 831. We think the best way to further this statutory purpose is to liberally construe a suspect's invocation of this right. *See Effler,* 769 N.W.2d at 896–98 (Appel, J., specially concurring); *State v. Chew,* 695 A.2d 1301, 1317–18 (N.J. 1997) ("Because the right to counsel is so fundamental, an equivocal request for an attorney is to be interpreted in a light most favorable to the defendant."). A detainee's invocation of section 804.20 should not turn on the grammatical clarity of the detainee's request. *See Effler,* 769 N.W.2d at 896–97 (Appel, J., specially concurring). Nor do we believe the statute authorizes law enforcement to make discretionary decisions as to

whether a detainee invoked this statutory right. *See State v. Garrity*, 765 N.W.2d 592, 596–97 (Iowa 2009). In order to further the purpose of the statute and ensure suspects are afforded their statutory right, we hold that when a suspect "restrained of [his] liberty" makes a statement that can reasonably be construed as a request to communicate with family members or an attorney, the suspect has invoked his section 804.20 right to communicate with family or counsel. By providing detainees this statutory right, the legislature has deemed that a detainee's right to communicate with family or counsel to be a tolerable burden upon law enforcement and suitably balances the state's law enforcement needs with the right of the accused. Our construction concerning the invocation of section 804.20 upholds this balance.

Turning to the good-faith aspect of an invocation of section 804.20 rights, we observe that this requirement does not have any statutory textual support, nor does *Ferguson* cite to any authority while casually requiring the suspect's request to be made in good-faith. *See Ferguson*, 424 N.W.2d at 466. Although the good-faith requirement has been often cited, it has never been relied upon as a basis for our decision. *See, e.g., Garrity*, 765 N.W.2d at 597; *Bromeland*, 562 N.W.2d at 626. The authority upon which the good-faith language rests is questionable. In our most recent case dealing with this statute, we noted that this requirement is extremely limited as shown by an example of a purpose that would not be in good-faith, i.e., if the suspect wanted to order a pizza—a clearly frivolous purpose. *Garrity*, 765 N.W.2d at 596. The reasoning implicit in our example in *Garrity* is our concern about authorizing law enforcement's discretionary power to determine what is or is not a "good-faith" motive for a suspect's phone call. Vesting law enforcement with this authority in effect conditions a suspect's section

804.20 rights upon autonomous, and possibly self-interested, discretion. Marcy Strauss, *The Sounds of Silence: Reconsidering the Invocation of the Right To Remain Silent Under* Miranda, 17 Wm. & Mary Bill Rts. J. 773, 814–15 (2009) (noting that police discretion and authority leverage permits officers to put off the will of the suspect, ultimately depriving them of their right). Compounding our concern is the difficulty one faces in discerning a person's singular purpose from their words. Finally, section 804.20 does not contemplate such discretionary autonomy, simply stating that an officer "shall permit" a detainee to "call, consult, and see" family or counsel. Iowa Code § 804.20.

We think the statutory limitation that the call, consultation, or visit must be with "a member of the person's family or an attorney" sufficiently ensures the detainee's request is related to seeking assistance or advice and not for some unrelated, frivolous purpose. Therefore, there is no need for law enforcement personnel to screen such requests to determine whether the request is made in good faith before honoring the request. We now abandon the good-faith requirement our prior cases had engrafted onto this statutory right.

The present case illustrates the wisdom of this approach. The district court found Hicks was not denied his rights under section 804.20, primarily because Hicks's motive for calling a family member was futile. Throughout Hicks's processing, Hicks expressed concern about whether he could go home. Pursuant to police department procedures, Hicks would not be released until he could pass a breath test. Hicks, however, repeatedly asked to call his mother, and within seconds of entering the processing room Hicks requested, "Can I call somebody to come get me out?" Section 804.20 does not vest law enforcement with the authority to judge the merits of a detainee's phone

call request other than a determination that the request is within the scope of section 804.20, i.e., directed to a family member or attorney. Hicks's articulated purpose for calling his mother may have been futile, but whether Hicks's mother could, in fact, get him out of jail was irrelevant. Hicks wanted his mother's assistance, and his request to call his mother was precisely the right contemplated by section 804.20. Hicks invoked his rights under section 804.20. Because Hicks invoked section 804.20, we must now determine whether Hicks was afforded his statutory right.

2. *Reasonable opportunity*. We have stated that once section 804.20 is invoked the peace officer must provide the detainee "with a reasonable opportunity" to contact a family member or attorney. *Bromeland*, 562 N.W.2d at 626. In *Bromeland*, a peace officer located the home phone number of the suspect's requested attorney, called the attorney, let the phone ring fifteen to twenty times, and asked the suspect if he wanted to contact another attorney. *Id.* at 625. We held the officer provided the detainee a "reasonable opportunity" to contact the attorney; therefore, the suspect's statutory rights were not violated. *Id.* at 626. Beyond *Bromeland*, however, we have not had the chance to illuminate what actions an officer must take to satisfy section 804.20.

The district court concluded "that the record indicates Hicks was permitted numerous opportunities to exercise his rights under section 804.20." We disagree. The district court noted that a telephone was located within reach of Hicks on the table where Sparks and Hicks were sitting, and that Sparks did nothing to deny Hicks the right to call his mother. First, from reviewing the tape of the processing room, no telephone is visible in the room. A small portion of the four-person table where Sparks and Hicks sat, the corner farthest diagonally from where

Hicks was seated, was not shown on camera. If a telephone was located in that corner, it clearly was not within the reach or control of Hicks. Second, even if a phone was in reach, we do not think that alone suffices to provide a detainee a "reasonable opportunity" to contact family.

Section 804.20 states it only applies when a suspect is "restrained of [his] liberty." Hicks argues section 804.20, in order to provide detainees with a "reasonable opportunity" to contact family or counsel, requires peace officers to take some affirmative action to permit the communication. We agree that section 804.20 requires law enforcement to take affirmative action to ensure the request for a phone call is honored. Because of the disparity in power between detaining officers and detained suspects during the detention process, no lesser standard is adequate. Requiring a suspect with restrained liberty to affirmatively pick up a police department's telephone and contact family or counsel without invitation from the detaining officer transforms section 804.20 into an illusory statutory right.

Moreover, requiring affirmative action by law enforcement personnel is consistent with our precedent. *See Bromeland,* 562 N.W.2d at 626 (holding the police officer provided the detainee a reasonable opportunity after looking up the phone number of the detainee's requested attorney and dialing the attorney's phone number); *Didonato v. Iowa Dep't of Transp.,* 456 N.W.2d 367, 371 (Iowa 1990) ("But when a request to make a phone call is made we do not believe the statutory purpose is met if the officer stands mute and refuses the request."). The legislature mandates law enforcement "shall permit [the detainee] . . . to call" a family member or attorney. We hold that once section 804.20 is invoked, the detaining officer must direct the detainee to the phone and

invite the detainee to place his call or obtain the phone number from the detainee and place the phone call himself.

During Hicks's processing, Sparks never directed Hicks to the phone, asked Hicks for the name and number of his mother, or attempted to place the phone call for Hicks. Instead, Sparks elected to continue to delay Hicks's requests by continuing with the booking process or engaging Hicks in Hicks's often meandering conversation. Sparks failed to provide Hicks a reasonable opportunity to make a phone call to a family member as guaranteed by section 804.20.

3. *Exclusionary rule.* The remedy associated with a section 804.20 violation is the exclusion of evidence, regardless of whether the detainee was denied his right to contact family or denied his right to consult with an attorney. *McAteer*, 290 N.W.2d at 925. "The exclusionary rule extends to the exclusion of breath tests, breath test refusals, and non-spontaneous statements . . . ." *Garrity*, 765 N.W.2d at 597.

In his motion to suppress, Hicks asked the district court to suppress all statements made subsequent to his request to speak with his mother pursuant to the statutory exclusionary rule. The State did not argue the applicable scope of the statutory exclusionary rule at the time of the suppression hearing nor has it argued on appeal that some other exception permits the admission of the video after the invocation of Hicks's right to make a call.[1] Thus, the State has conceded that

---

[1]We have held that the exclusionary rule under section 804.20 does not extend to spontaneous statements. In *Moorehead*, the State argued that incriminating statements made after a section 804.20 violation are still admissible because the statement was made spontaneously. *Moorehead*, 699 N.W.2d at 675. We agreed with the State that spontaneous statements are not included within the scope of the statutory exclusionary rule and remanded the case to the district court to determine whether the defendant's statements were spontaneous. *Id.*

suppression of the video—from the point when Hicks first requests to speak with his mother, approximately fifty-eight seconds into the video—is an appropriate remedy if section 804.20 was violated. *See Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) ("[W]e will not speculate on the arguments [the parties] might have made and then search for legal authority and comb the record for facts to support such arguments."); *Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d. 239, 240 (Iowa 1974) (noting that we do not "assume a partisan role and undertake [a party's] research and advocacy"). We have concluded section 804.20 was violated; thus, all but the first fifty-eight seconds of the processing room video should be excluded. The exclusionary rule also requires evidence concerning Hicks's refusal to submit to chemical testing to be excluded. *Vietor*, 261 N.W.2d at 832.

**C. Admission of Horizontal Gaze Nystagmus Testimony.** Hicks objected to Sparks's testimony about Hicks's results on the horizontal gaze nystagmus test, alleging the test was not properly administered. Specifically, Hicks argues the test was unreliable because a strobe light was present while the test was administered and Sparks failed to use a contrasting background. The district court overruled Hicks's objection. We review the admissibility of expert testimony for an abuse of discretion. *State v. Murphy*, 451 N.W.2d 154, 158 (Iowa 1990).

We have stated "that testimony by a properly trained police officer with respect to the administration and results of the horizontal gaze nystagmus test is admissible without need for further scientific evidence." *Id.* Officer Sparks is an experienced officer and has been properly trained in administering the horizontal gaze nystagmus test. Thus, no further foundation is necessary for the scientific basis for the test.

The issue presented, however, is whether sufficient foundation existed that the test was properly administered and thus reliable. The district court allowed the testimony, but permitted Hicks to challenge Sparks's testimony on cross-examination. We hold the district court did not abuse its discretion in overruling Hicks's objection to Sparks's testimony. It was for the jury to decide the weight it would give to Sparks's testimony. *See State v. Stratmeier*, 672 N.W.2d 817, 821 (Iowa 2003) ("[A]ny challenge to the procedures used in obtaining the chemical test goes to the weight of the evidence rather than its admissibility."); *see also State v. Balbi*, 874 A.2d 288, 295 (Conn. App. Ct. 2005) ("Numerous courts have concluded that attacks on the administration of the horizontal gaze nystagmus test pertain to the weight rather than to the admissibility of the evidence.").

**III. Disposition.**

The State violated Hicks's statutory right to call his mother. The remedy for a violation of section 804.20 is exclusion of any evidence gathered after invocation of the right. In this case, evidence of Hicks's breath test refusal and the portion of the processing room video after Hicks asked to call his mother, approximately fifty-eight seconds into the video, should have been excluded. The district court erred in denying Hicks's motion to suppress. This error is not harmless, and thus we reverse and remand for a new trial.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED WITH INSTRUCTIONS.**