# IN THE COURT OF APPEALS OF IOWA

No. 16-0891
Filed February 22, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**BRYAN A. DANIEL,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Marshall County, Kim M. Riley, District Associate Judge.

        Bryan Daniel appeals his judgment and sentence for operating while intoxicated. **AFFIRMED.**

        Grant C. Gangestad of Gourley, Rehkemper, & Lindholm, P.L.C., West Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.

        Considered by Vogel, P.J., and Tabor and Mullins, JJ.

**MULLINS, Judge.**

Bryan Daniel was charged with operating while intoxicated and carrying a weapon. He filed a motion to suppress the evidence of his refusal to take a breath test. The court denied the motion and convicted Daniel of both offenses after a bench trial. The court imposed judgment and sentence on the conviction of operating while intoxicated. Daniel received a deferred judgment on the weapon conviction. He appeals.

## I.       Background Facts and Proceedings

In the early morning hours of October 26, 2015, Bryan Daniel was in a Marshalltown bar consuming alcohol. A Marshalltown police officer, Ryan Goecke, observed Daniel's state of impairment and confronted him. Daniel told Goecke he would get a ride from a friend. Later, Officer Paul Heitman observed a motorcycle pass his patrol car at a high rate of speed. Heitman observed the motorcycle fail to stop at an intersection, sway, and drive over the center line of the road. By this time, Heitman had called the license plate of the vehicle in to dispatch and had learned about Goecke's earlier contact with Daniel. Heitman stopped the vehicle, which Daniel was driving.

Heitman observed Daniel's eyes to be watery and his reaction time to be slow. He detected an odor of alcohol. Daniel admitted to consuming alcoholic beverages. Daniel alerted the officer he was carrying a handgun, for which he had a valid permit. Daniel gave the handgun to Heitman, who found it to be loaded. Heitman emptied the weapon. He submitted Daniel to a preliminary breath test. Daniel told Heitman, "I'm going to go bad on it." The test showed a

result of a .205 blood alcohol concentration. Daniel completed a one-leg stand test and exhibited two out of four potential signs of impairment. Daniel was arrested for operating while intoxicated and carrying a weapon.

Daniel was transported to the police station for further investigation. At the station, Heitman made a request for a breath specimen. Daniel responded he had been instructed in the military not to consent to a breath test but he would consent to a blood test. Heitman responded he did not know why Daniel would have gotten such advice and again asked Daniel to check a box indicating whether he would consent to or refuse the breath test. Daniel asked, "If I refuse, do we then go to the hospital to do blood?" Heitman replied, "No, I wouldn't take you there. I don't think you have any drugs on board so I have no reason to take you to the hospital." Daniel again said he was told to consent to a blood test and said he believed a blood test was more accurate than a breath test. Heitman told him he needed to make a decision whether to consent. Daniel said, "If I hit refuse, do we do a blood test?" Heitman repeated his answer that he would only give a blood test if he thought drugs were involved and he did not think that was the case here. Daniel asked what "the next testing" would be if he refused. Heitman said, "I have no other testing for you other than this. This is the only testing I have for you." Daniel apologized and said he was not trying to be "trouble." Heitman asked Daniel if he wanted to call someone to discuss his decision. Daniel appears[1] to decline the offer; then he asked again, "What happens if I hit refuse?" Heitman answered that the test would be refused and

---

[1] Most of the conversation at the station is audible on the tape provided for our review; here, and in a few other places, Daniel's response is mumbled.

"we'll go from there." Daniel again apologized for being "trouble." Heitman said it was no trouble, apologized for being blunt with Daniel, said he could not influence Daniel's decision, and again reiterated that he would "go from there" if Daniel refused but said he was not going to tell Daniel which way they would "go from there" to avoid influencing Daniel's decision. Daniel appears to comment that "nine out of ten people" refuse the test. Daniel refused the breath test.

Daniel subsequently moved to suppress his refusal. His motion was denied. Daniel was convicted, after a trial on the minutes of testimony, of operating while intoxicated, first offense, in violation of Iowa Code section 321J.2(1) (2015), and carrying a weapon, in violation of sections 724.4(1) and 724.4C.[2] Judgment was entered, and he was sentenced on the operating-while-intoxicated offense. He received a deferred judgment on the weapon charge. He has appealed. Daniel also filed an application for discretionary review of his deferred judgment for carrying a weapon. That application was denied by a justice of the supreme court.

On appeal, Daniel has one contention: The district court erred when it concluded his right to an independent test under section 321J.11 was not violated. As a result, he argues evidence of his test refusal should be suppressed and his conviction must be reversed.

---

[2] Although Daniel had a permit to carry a weapon, such a permit "is invalid if the person to whom the permit is issued is intoxicated as provided in section 321J.2, subsection 1." Iowa Code § 724.4C.

II.     **Standard of Review**

We review a district court's decision to deny a motion to suppress based on its interpretation of a statute for correction of errors at law.[3]  *State v. Madison*, 785 N.W.2d 706, 707–08 (Iowa 2010).

III.     **Analysis**

A "person may have an independent chemical test or tests administered at the person's own expense in addition to any administered at the direction of a peace officer."  Iowa Code § 321J.11.  "A defendant is not entitled to an independent test until after he has taken the test requested by the officer."  *State v. Wootten*, 577 N.W.2d 654, 655 (Iowa 1998).  "Officers are not required to advise a defendant of the statutory right to an independent test."  *Id.*

Daniel contends he invoked his right to an independent test because "any statement that can be reasonably construed as a request for an independent chemical test" is adequate to do so.  *See State v. Lukins*, 846 N.W.2d 902, 909 (Iowa 2014).  However, in *Lukins*, the defendant had already taken one breath test at the jail and asked the officer for a "re-check," which our supreme court held was adequate to trigger the statutory right to an independent test.  *See id.* at 909–10.  Here, in contrast, Daniel had no right to an independent test because he refused the initial breath test.  *See State v. Bloomer*, 618 N.W.2d 550, 553 (Iowa 2000) (stating a defendant "must submit to a state-administered chemical test before being allowed to demand an independent test"); *but see Lukins*, 846

---

[3] We consider the appeal only as to the conviction of operating while intoxicated because the supreme court previously denied Daniel's application for discretionary review of the deferred judgment for carrying a weapon.

N.W.2d at 914 (Waterman, J., dissenting) (interpreting *Lukins* majority to overrule *Bloomer*). Daniel could not invoke a right he did not have.

Daniel urges us to take a broader view of *Lukins*, to "liberally construe" the language of section 321J.11. *See Lukins*, 846 N.W.2d at 909. Indeed, there is some broad language there: "[W]e see no reason why a detainee should be required to string together a precise formulation of words mirroring the statutory language in order to invoke his or her statutory right to an independent chemical test." *Id.* And: "Rather, if an imprecise statement, reasonably construed, implicates the statute, then the officer should inform the detainee of his or her right to an independent chemical test under Iowa Code section 321J.11." *Id.* (citing *Didonato v. Iowa Dep't of Transp.*, 456 N.W.2d 367, 371 (Iowa 1990)). But again, Daniel did not have a right to invoke. In addition, the cases underpinning this language in *Lukins* are unpersuasive in this context. In *Ginsberg v. Iowa Department of Transportation*, 508 N.W.2d 663, 664 (Iowa 1993), a detainee requested a second test in addition to a breath test. That is not the case here. And two other cases, *Didonato*, 456 N.W.2d at 370–71, and *State v. Hicks*, 791 N.W.2d 89, 95 (Iowa 2010), dealt with the invocation of the right to make a phone call while in custody pursuant to section 804.20. That right, however, attaches immediately upon arrest. *See State v. Markley*, 884 N.W.2d 218, 219 (Iowa Ct. App. 2016). The *Lukins* court was not asked to decide whether the right conferred in section 321J.11 attaches at arrest, and *Bloomer*, which indicates the right does not attach at arrest, remains good law. *See Lukins*, 846 N.W.2d at 908 ("[T]he detainee who submits to the police

officer's requested blood alcohol test may have some vague notion that he or she is entitled to an independent chemical test. He or she may not know, however, that the chemical test is available only after the detainee submits to the officer's requested test . . . ." (citing *Bloomer*, 618 N.W.2d at 553)). We decline to extend *Lukins* further than necessary to decide this case.

It is undisputed Daniel refused the breath test. Thus, he had no right to any other test. We need not reach the separate question of whether Daniel's statements would have been sufficient to invoke his right to an independent test if he in fact had submitted to the requested breath test. The district court's suppression ruling was correct as a matter of law. We therefore affirm.

**AFFIRMED.**

Vogel, Presiding Judge, concurs; Tabor, Judge, concurs specially.

**TABOR, Judge.** (specially concurring)

I concur with the majority's decision to affirm Daniel's conviction for operating while intoxicated under Iowa Code section 321J.2(1) (2015). But I write separately to depart from the majority's conclusion that the district court properly denied Daniel's motion to suppress his breath-test refusal. I believe once Daniel asked about the possibility of independent chemical testing, the officer had an obligation to inform Daniel of his rights under Iowa Code section 321J.11, or at a minimum, the officer had an obligation not to misinform Daniel about the right to obtain a blood test.

In *State v. Lukins*, our supreme court reiterated its disapproval of "peace officers impeding detainees' access to rights granted by the legislature." 846 N.W.2d 902, 909 (Iowa 2014). I believe that is what happened here. Daniel asked about obtaining a blood test because he had received information during his military service that blood tests were more accurate than breath tests. Rather than telling Daniel that he would be entitled under Iowa law to an independent blood test only after he submitted to the officer's requested breath test, the officer instead replied "he would only test for blood if [the officer] believed there was drugs in [Daniel's] system." The officer's response had the potential to mislead Daniel into believing that even if he submitted to a breath test, the officer would not honor his request for an independent blood test because the officer did not suspect Daniel was using drugs. The officer should have been more forthcoming about Daniel's rights to an independent test under section 321J.11.

In *Ginsberg v. Iowa Department of Transportation*, the arresting officer invoked implied consent and asked for a breath test; after telephoning his attorney, Ginsberg said he wanted to take a blood or urine test. 508 N.W.2d 663, 664 (Iowa 1993). Ginsberg said he was not refusing the breath test, he just wanted his blood or urine tested as well; nevertheless, the officer treated Ginsberg's request for an additional test as a refusal. *Id.* The supreme court concluded: "When Ginsberg requested that his blood or urine be tested in addition to his breath, the peace officer should have explained that, after the requested breath test had been completed, Ginsberg would be able to have other substances tested." *Id.* While *Ginsberg* makes clear that an arrestee cannot demand the independent test be *performed* before the test requested by the officer, the case recognizes an arrestee may *request* an independent test before submitting to the breath test—triggering the officer's obligation to explain section 321J.11.

It is true Daniel asked for a blood test instead of, not in addition to, the breath test. But that is likely because he was unaware of the contours of his rights under section 321J.11. *See Lukins*, 846 N.W.2d at 908. Once Daniel requested what he believed to be a more accurate testing method, the officer should have advised that only after a breath test was completed could Daniel have other substances tested. Such an advisory would have been consistent with section 804.20 cases where "the absence or shortage of knowledge on the detainee's part warranted enabling the detainee to invoke his or her rights by

legally inaccurate requests." *Id.* The district court should have suppressed the evidence of Daniel's refusal under *Ginsberg* and *Lukins.*

I concur in the result because the district court's consideration of the breath-test refusal was harmless given the overwhelming evidence Daniel operated his motorcycle under the influence of alcohol. *Cf. State v. Garrity*, 765 N.W.2d 592, 597–98 (Iowa 2009) (finding violation of section 804.20 was harmless error).