# In the Iowa Supreme Court

---

No. 23–0964

Submitted March 26, 2025—Filed May 23, 2025

---

**State of Iowa,**

Appellee,

vs.

**Hope Jennifer Clark,**

Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Des Moines County, Emily Dean, district associate judge.

A defendant convicted of operating while intoxicated seeks further review of a court of appeals decision affirming her conviction. **Decision of Court of Appeals and District Court Judgment Affirmed.**

Christensen, C.J., delivered the opinion of the court, in which Mansfield, McDonald, and May, JJ., joined. Oxley, J., filed a dissenting opinion, in which Waterman and McDermott, JJ., joined.

Kent A. Simmons (argued), Bettendorf, for appellant.

Brenna Bird, Attorney General, and Joshua A. Duden (argued), Assistant Attorney General, for appellee.

**Christensen, Chief Justice.**



As the old adage goes, "A picture is worth a thousand words." And this video image, when viewed with the entire booking video admitted into evidence, definitively demonstrates that the defendant had a reasonable opportunity to use her phone, which was placed inches away, to contact an attorney following her arrest.

The defendant was pulled over by two deputies in Des Moines County after they responded to a reckless-driver complaint and observed the defendant driving erratically. Noting the defendant's symptoms of intoxication, the deputies began running field sobriety tests, which the defendant failed to complete. The defendant requested an attorney when asked if she would submit to a preliminary breath test and was arrested. The officers read her rights, and she again requested an attorney but made no attempt to contact one.

The defendant was charged with operating a motor vehicle while intoxicated (OWI), first offense. In her motion to suppress, she claimed her rights were violated under Iowa Code section 804.20 (2022) when the deputies did not

permit her to call an attorney. The district court denied her motion, and the case proceeded to a jury trial, where the district court denied her motion in limine to suppress alleged hearsay evidence regarding testimony by the deputies about a conversation with the dispatcher. In the end, the jury found the defendant guilty. On appeal, she challenges the sufficiency of the evidence, the district court's denial of her motion in limine, and the district court's denial of her motion to suppress.

The court of appeals agreed with the district court on these issues, and we granted further review. On review, we adopt the court of appeals opinion for all claims except the motion to suppress issue concerning Iowa Code section 804.20 and the defendant's claim that she was not permitted to call an attorney. On this issue, we determine that Iowa Code section 804.20 was not violated.

**I. Background Facts and Proceedings.**

On June 9, 2022, deputies Sean Phillips and Blake Cheesman of the Des Moines County Sheriff's Department received dispatch notification of a reckless driver around 11 p.m. Phillips was working with Cheesman as his field training officer. After turning around to follow the dark-colored convertible described in the call, the deputies observed the driver speeding, hitting a curb, and failing to keep her lane. The deputies then decided to pull over the driver and turned on the marked law enforcement vehicle's lights and sirens. The deputies pulled up behind the driver in a turning lane, but the driver did not stop her vehicle. Deputy Phillips had to get out of his vehicle and tap on the car while giving a verbal cue to stop the driver from making a left turn.

Once the convertible stopped, Deputy Phillips asked the driver for her license, registration, and insurance. After some initial questions about her driving, the driver responded affirmatively when Deputy Phillips asked, "Have we had anything to drink tonight?" The driver then handed over her license to

Deputy Cheesman, revealing her identity as Hope Clark. After a few more questions, Deputy Cheesman asked her again whether she had been drinking, and this time she responded, "No." At this point, Deputy Cheesman asked Clark to exit her vehicle and had to remind her to put the car in park before she exited. Deputy Phillips testified that Clark was unbalanced while exiting the car.

Once Clark was out of her vehicle, Deputy Cheesman attempted to continue questioning her. Throughout the deputies' earlier questioning, she stated she was having trouble hearing. Once outside her vehicle, Clark explicitly told Deputy Cheesman that she is a person with hearing loss. Clark then reaffirmed that she had not been drinking and agreed to submit to field sobriety tests once she understood what the deputies were asking her. Deputy Phillips informed her that they wanted to conduct the tests "based on the smell of alcohol coming from y[ou] and your driving."

Deputy Cheesman first conducted the horizontal gaze nystagmus test. This test required Clark to keep her head still and follow one of Deputy Cheesman's fingertips with only her eyes. During the test, Clark struggled to follow these instructions. Still, Deputy Cheesman testified at trial that he observed six out of the six clues he was looking for while conducting the test, which indicated to him that Clark was intoxicated.

Clark did not fully complete the second test, the walk-and-turn. Before she attempted the test, Clark told the deputies that she did not have an injury that would affect her balance.[1] Deputy Phillips also offered to assist Clark in removing her wedge heels to aid in her balance and completion of the test, but Clark still stumbled while removing her shoes. Deputy Cheesman and Deputy Phillips attempted to conduct the test with Clark; however, she continually started the

---

[1]Clark offered competing evidence during trial of an ankle injury that impacted her balance.

test before they finished explaining the instructions, and they were unable to complete it. The deputies then determined they would not conduct the third and final test, the one-legged stand, for safety reasons.

At this point, Deputy Cheesman asked Clark if she would be willing to submit to a preliminary breath test. Clark stated, "I need an attorney." Deputy Cheesman again asked if she would submit to the test, and she replied, "I think I want my attorney." The deputies considered her statement to be a refusal and placed Clark under arrest for suspicion of operating while intoxicated.

Clark was transported to the Des Moines County jail for processing and further questioning. After processing, Clark was brought into a room to speak with Deputy Cheesman and Deputy Phillips. She was no longer wearing any restraints and was asked to sit in a chair in the corner of the room.

Directly after Clark was asked to sit down, Deputy Cheesman explained that he was going to read Clark her rights. Clark asked, "Do I have a right to an attorney?" and Deputy Cheesman responded, "Yep, that's what this all is." At the same time, Deputy Phillips brought Clark's phone into the room. Deputy Cheesman placed the phone on the table between Clark and himself, as shown in the picture above. Clark thanked him after acknowledging the placement of the phone, and Deputy Cheesman then proceeded to read Clark her *Miranda* rights. After Deputy Cheesman finished reading, he asked Clark if she understood her rights, and she nodded her head yes. He also asked Clark, "Do you wish to talk to us now?" Clark once again nodded her head yes.

After Clark was read her *Miranda* rights, Deputy Cheesman then proceeded to read Clark information about the implied consent provisions in Iowa Code chapter 321J. Before he began, Deputy Cheesman placed a piece of paper directly in front of Clark and over the top of her phone so that she could follow along. After he was finished reading the implied consent, Deputy

Cheesman requested Clark provide a breath sample but noted that he was going to read Iowa Code section 804.20 to her before she answered.

While the paper was still on top of Clark's phone, Deputy Cheesman read section 804.20 directly out of the Code to her, which explained her right to contact an attorney or family member. After he finished reading, Deputy Cheesman informed Clark that she could make a reasonable number of phone calls before agreeing to provide a breath sample while gesturing in the direction of Clark and her phone. Clark responded by shaking her head no. This prompted Deputy Cheesman to ask, "You don't want to call anybody?" to which Clark replied that she wanted her attorney. Once again, Deputy Cheesman stated, "You can call them, if you want," while making another gesture in the direction of her and the phone. Clark again responded that she wanted her attorney but did not take any action to make a call. At this point, Deputy Phillips explained to Clark that she could call her attorney and once she was done they were going to ask her to consent or refuse to submit to a breath test. He stated this while gesturing in the direction of Clark and her phone. Clark responded that she was going to refuse the breath test.

After this exchange, Deputy Phillips attempted to have Clark sign an acknowledgement that she refused to submit to a breath test. As Clark began to try to read the screen that displayed an acknowledgement for her to sign indicating that she refused to submit to a breath test, she reiterated that she was saying no to everything and that she wanted her attorney. Deputy Phillips attempted to explain what she was signing, but Clark was struggling to see the screen and once again asked for her attorney. Deputy Phillips determined that she was refusing to sign and directed Clark out of the room.

Once Clark was out of the room, she asked the jailer if she could call her attorney. The jailer told her that she could not have her phone, but she could have a number out of her phone and use the jail's phone to make a call. Clark is unable to hear on a pay phone because of her hearing loss, so she asked the jailer if the jailer could make the call for her. The jailer would not call an attorney for Clark but did call a bail bondsman.

Clark was charged with operating a motor vehicle while intoxicated, first offense, in violation of Iowa Code section 321J.2. She pleaded not guilty to all charges, and a jury trial was scheduled. Before trial, Clark filed a motion to suppress, asking the district court to suppress any evidence that occurred after Clark was denied her right to contact an attorney under Iowa Code section 804.20. The district court denied Clark's motion, stating:

> Clark was allowed to use her cell phone while at the jail. It was in fact retrieved for her by the arresting deputies. Clark was read the implied consent advisory and the 804.20 advisory. She was allowed to make phone calls to anyone from the jail, and was instructed on multiple occasions that [she] could call her attorney and that she could do so prior to making a decision. She was allowed to read the advisory on paper and on computer. There were no restrictions placed on who Clark could call or how many calls she could make.

The case then proceeded to a jury trial. After opening arguments, Clark moved to exclude any testimony regarding the reckless driver call that dispatch relayed to the deputies as prejudicial hearsay. The district court denied this motion as well: "I don't believe that's hearsay because it's nothing that's being offered for the truth of the matter asserted; it simply is what the officers -- why they were stopping the defendant with that vehicle description."

Later during trial, Clark testified that she has been a person with hearing loss from a young age. She described her hearing loss as "a severe profound high frequency loss with 70 to 80 percent loss in each ear." Clark relies on her hearing

aids, visual cues, and lip reading to hear other people and engage in conversations without sign language. It is undisputed that the deputies knew of her hearing loss during their exchange with Clark.[2]

After the presentation of all the evidence, including testimony by Deputy Cheesman, Deputy Phillips, and Clark, the jury reached a guilty verdict. Clark timely appealed this decision. We transferred the case to the court of appeals, which affirmed Clark's conviction. We granted Clark's application for further review.

**II. Analysis.**

On appeal, Clark challenges the sufficiency of the evidence to sustain her conviction, the district court's denial of her motion in limine, and the district court's denial of her motion to suppress. We will only review the Iowa Code section 804.20 issue concerning Clark's claim that her rights were violated because she was not permitted to contact an attorney, and will allow the court of appeals decision concerning the sufficiency of the evidence and the motion in limine to stand. *See In re Marriage of Schenkelberg*, 824 N.W.2d 481, 483 (Iowa 2012) ("In considering an application for further review, we have the discretion to review all or part of the issues raised on appeal or in the application for further review.").

Clark contends that she was denied her right to contact an attorney under Iowa Code section 804.20, and the district court should have granted her motion to suppress.[3] The State contends that Clark was given a reasonable opportunity

---

[2]Clark's driver's license indicated that she is a person with hearing loss.

[3]In Clark's motion to suppress, she also argued that the deputies violated her rights under the "Fourth Amendment to the United States Constitution and similar provision of the Iowa Constitution." However, the district court's ruling did not address these claims, and Clark did not make an additional motion to preserve the constitutional challenges for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal.").

to contact her attorney without "unnecessary delay," and the district court agreed. "We review the district court's interpretation of Iowa Code section 804.20 for errors at law." *State v. Moorehead*, 699 N.W.2d 667, 671 (Iowa 2005). "If the district court properly applied the law and there is substantial evidence to support its findings of fact, we will uphold its ruling on a motion to suppress." *Id.*

**A. Statutory Background.** Iowa Code section 804.20 states:

> Any peace officer or other person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both. Such person shall be permitted to make a reasonable number of telephone calls as may be required to secure an attorney.

This section creates a limited right that requires a law enforcement officer to afford a suspect a reasonable opportunity to contact an attorney or family member when requested. *State v. Hicks*, 791 N.W.2d 89, 94 (Iowa 2010). A suspect's invocation of this right should be construed liberally, but a law enforcement officer is not required to inform a suspect of the right. *State v. Starr*, 4 N.W.3d 686, 693 (Iowa 2024); *State v. Lyon*, 862 N.W.2d 391, 400–01 (Iowa 2015). Overall, we "apply section 804.20 pragmatically, 'balancing the rights of the arrestee and the goals of the chemical-testing statutes.' " *State v. Davis*, 922 N.W.2d 326, 331 (Iowa 2019) (quoting *State v. Lamoreux*, 875 N.W.2d 172, 177 (Iowa 2016)).

The parties do not dispute that Clark was in custody or restrained of her liberty when she requested an attorney,[4] that she adequately invoked her right

---

[4] When Clark first requested an attorney, she had already failed one field sobriety test and was unable to complete the other two. The deputies had observed her commit multiple traffic violations and noticed the smell of an alcoholic beverage emanating from her breath. Clark was arrested immediately after requesting an attorney because she refused to submit to a preliminary breath test. Clark made her request when she was restrained of her liberty. *See Moorehead*, 699

to an attorney, or that she was brought to a place of detention. Rather, the parties disagree as to whether there was an unnecessary delay in allowing Clark to contact an attorney and whether Clark was given a reasonable opportunity to contact an attorney. We will address each issue in turn.

**B. Unnecessary Delay.** First, Iowa Code section 804.20 requires that a suspect who has invoked the right be afforded the opportunity to contact an attorney or family member "without unnecessary delay after arrival at the place of detention." Clark contends that the reading of her *Miranda* rights, the implied consent provisions, and section 804.20 after she arrived at the Des Moines County jail was an unnecessary delay. However, the State argues that necessary administrative procedures, which took approximately eleven minutes, were the only matters performed before Clark was given an opportunity to contact an attorney.

We recently addressed what constitutes an unnecessary delay under section 804.20. In *State v. Starr,* we noted "that the language 'without unnecessary delay' means there must exist some circumstances when delay would be *necessary*" and "that the statute does not limit the *kinds of situations* that might necessitate delay." 4 N.W.3d at 698. In that case, the defendant was denied his right to contact an attorney or family member for over two hours, and law enforcement waited nearly two hours before questioning the defendant about the stolen guns that could have been a public safety threat. *Id.* at 691, 699. That was an unnecessary delay. *Id.*

---

N.W.2d at 671–72 ("Moorehead had already failed three field sobriety tests, a preliminary breath test, arguably made an incriminating statement, and displayed many symptoms of drunkenness. . . . He was restrained of his liberty, and therefore his request fell within the timeframe of the statute. Like the court of appeals, we can find nothing in the plain language of Iowa Code section 804.20 that requires the defendant make his request for counsel or a family member at the ultimate place of detention.").

Here, a significantly different situation took place. Once Clark arrived at the jail, her request for an attorney had to be honored without unnecessary delay. But the only occurrences that took place before the deputies stated that Clark could contact an attorney were administrative processes that are typical of an OWI arrest. It took approximately eleven minutes and thirty-four seconds for Clark to enter the jail, go through processing, enter the room where Deputy Cheesman was located, and for Deputy Cheesman to read her *Miranda* rights, provisions of Iowa's implied-consent law, and section 804.20, which informed her who she was allowed to call and how many calls she could make.

Clark did not experience an unnecessary delay. Section 804.20 is to be applied pragmatically, and there are necessary security and administrative procedures that must be performed before a suspect is given a reasonable chance to contact an attorney or family member. In this case, these tasks were not used by the deputies to cause unnecessary delay.

**C. Reasonable Opportunity.** Next, we must consider whether Clark was afforded a reasonable opportunity to contact her attorney. Clark argues that she did not have a reasonable opportunity because the deputies did not inform her that she could use her phone or the jail's phone when she was given a chance to make a call. The State argues that it was enough for Clark to be provided with her phone and told she could make a call.

"Section 804.20 does not provide an absolute right to counsel, but requires a peace officer to provide the arrestee with a reasonable opportunity to contact an attorney." *Bromeland v. Iowa Dep't of Transp.*, 562 N.W.2d 624, 626 (Iowa 1997) (per curiam). In *State v. Hicks*, we explained that

> section 804.20 requires law enforcement to take affirmative action to ensure the request for a phone call is honored. Because of the disparity in power between detaining officers and detained suspects during the detention process, no lesser standard is adequate. Requiring a suspect with restrained liberty to affirmatively pick up

a police department's telephone and contact family or counsel without invitation from the detaining officer transforms section 804.20 into an illusory statutory right.

791 N.W.2d at 97. For a reasonable opportunity to be afforded, "the detaining officer must direct the detainee to the phone and invite the detainee to place [her] call or obtain the phone number from the detainee and place the phone call himself." *Id.*

Here, Clark was given a reasonable opportunity to contact an attorney. Deputy Cheesman and Deputy Phillips both told Clark multiple times that she could contact her attorney while her phone was placed mere inches away from her, as shown in the photograph. Additionally, both deputies gestured in the direction of Clark and her phone when they stated that she could make a reasonable number of phone calls. The deputies only needed to *permit* Clark to have a reasonable opportunity to make a phone call, which they did by telling her multiple times that she could contact her attorney and by giving her access to her own phone.

### III. Conclusion.

For the foregoing reasons, we affirm the decision of the court of appeals and Clark's conviction.

**Decision of Court of Appeals and District Court Judgment Affirmed.**

Mansfield, McDonald, and May, JJ., join this opinion. Oxley, J., files a dissenting opinion, in which Waterman and McDermott, JJ., join.

**Oxley, Justice (dissenting).**

The majority concludes that Clark was permitted to call her attorney when a deputy placed her cellphone on the desk, labeling a picture of the phone within Clark's reach as "worth a thousand words." But the picture is a mere snapshot of a single moment in time. The picture comes into clearer focus after watching the full-length film of the encounter. Despite numerous requests, Clark was never actually given a reasonable opportunity to contact an attorney. I therefore respectfully dissent.

Iowa Code section 804.20 (2022) requires a peace officer to permit a person in the officer's custody to contact an attorney "without unnecessary delay after arrival at the place of detention." Two distinct inquiries are required to determine whether Clark was denied that statutory right. There is no dispute that Clark adequately invoked her statutory right to contact an attorney, satisfying the first inquiry. *See State v. Hicks*, 791 N.W.2d 89, 94 (Iowa 2010) ("First, we must determine whether [Clark] invoked [her] rights under section 804.20."). So Clark's appeal turns on the second inquiry—whether Clark "was afforded the rights section 804.20 guarantees," *id.*, i.e., a reasonable opportunity to contact an attorney, *see id.* at 96 ("[O]nce section 804.20 is invoked the peace officer must provide the detainee 'with a reasonable opportunity' to contact a family member or attorney." (quoting *Bromeland v. Iowa Dep't of Transp.*, 562 N.W.2d 624, 626 (Iowa 1997) (per curiam))).

We explained one of the primary purposes for the statutory right to call an attorney "without unnecessary delay" in *State v. Vietor*, 261 N.W.2d 828, 829–32 (Iowa 1978). When a person is arrested for driving while under the influence of alcohol and asks to call her lawyer, she "shall be afforded a right to do so . . . *before being required to elect whether* [*she*] *shall submit to a chemical test.*"

*Id.* at 832 (emphasis added) (discussing Iowa Code section 755.17, the predecessor to section 804.20). Delaying the right to contact an attorney until after being required to make that election defeats the point of Iowa Code section 804.20. Consequently, "[i]f [she] is denied that opportunity, evidence of [her] refusal to take [a] chemical test shall be inadmissible at a later criminal trial." *Vietor*, 261 N.W.2d at 832.

In *State v. Hicks*, we further clarified what an officer must do to satisfy Iowa Code section 804.20. 791 N.W.2d 89. There, much like here, the district court found that a defendant "was permitted numerous opportunities to exercise his rights under section 804.20" because a telephone was within his reach on the table between him and the officer and the officer "did nothing to deny Hicks the right to call his mother." *Id.* at 96. We disagreed, reasoning that "even if a phone was in reach, we do not think that alone suffices to provide a detainee a 'reasonable opportunity' to contact family." *Id.* We emphasized that "section 804.20 requires law enforcement to take affirmative action to ensure the request for a phone call is honored." *Id.* at 97.

> Because of the disparity in power between detaining officers and detained suspects during the detention process, no lesser standard is adequate. Requiring a suspect with restrained liberty to affirmatively pick up a police department's telephone and contact family or counsel without invitation from the detaining officer transforms section 804.20 into an illusory statutory right.

*Id.*

The majority's attempt to distinguish *Hicks* ignores the significant evidence presented in this case beyond the picture that starts its opinion. Even though Clark's cellphone was placed on the table, a full review of the evidence presented at the suppression hearing reveals that there really is no daylight between what happened here and what we found inadequate in *Hicks*.

The video footage reveals that after being transported to the Des Moines County jail for processing, Clark was brought into a private room with Deputy Cheesman and Deputy Phillips for further questioning. As directed by the deputies, Clark sat in a chair in the corner of the room. Deputy Phillips walked in and put Clark's cellphone on the desk. Deputy Cheesman told Clark that he was going to read her rights to her; Clark asked if she had a right to an attorney; and Deputy Cheesman responded, "Yep, that's what this all is," and proceeded to read the *Miranda* rights from a card. Even though Clark's cellphone was sitting on the desk—as depicted in the majority's snapshot—Deputy Cheesman did not stop to allow Clark to make a call at that time. Rather, he kept reading her rights. Deputy Phillips then brought in a copy of the implied consent statute. Deputy Cheesman placed that paper over Clark's cellphone, told Clark that she could follow along, and then spent the next two-and-a-half minutes reading the implied consent statute. Thus, while it is true that Deputy Phillips placed Clark's cellphone within her reach, Deputy Cheesman continued talking to her until long after the cellphone was covered by the implied consent document.

Next, Deputy Cheesman requested a specimen of Clark's breath but then stopped, saying that before she answered that question, he would read her the provisions in Iowa Code section 804.20. When he finished reading section 804.20, Clark said, "I just want my attorney." At this point, her cellphone was under the paper. Deputy Phillips walked over, stood directly in front of Clark, and said to her: "You're more than welcome to start making those phone calls to try to talk to your attorney. Ok, . . . and once you're done making those phone calls, we're going to ask whether you consent or refuse our breath test." Clark responded that she was going to refuse, and Deputy Phillips immediately directed her to walk over to the computer screen to sign the refusal. The

promised phone calls were clearly no longer available. This is the first clear violation of section 804.20.

The deputies then retrieved Clark's glasses to help her read the computer screen. When directed where to sign to say that she was refusing the breath test on the computer, Clark again said, "I -- I don't know. . . . I need my attorney." Rather than honor that request, Deputy Phillips instead replied, "So you're refusing to sign as well." Clark responded, "I'm refusing everything," and Deputy Phillips directed her out of the room. This is the second clear violation of section 804.20. It appears that Deputy Phillips then clicked the "refuse to sign" button on the computer screen after Clark walked out of the room—without her cellphone—as directed.

It is also important to consider Deputy Cheesman's testimony that he "believe[d] the jail's policy is they can use their phone to get numbers, but I don't think they actually make calls from their personal phone" and explained that there is a pay phone available for detainees to use. This is not an uncommon practice. *See, e.g.*, *State v. Sewell*, 960 N.W.2d 640, 642 (Iowa 2021) (explaining that Dickinson County Sheriff's "Deputy Grimmus also indicated that the jail policy is for all detainee calls to be on the jail landline, which is recorded," including calls made pursuant to Iowa Code section 804.20). So the deputy sitting right across the desk from Clark and who continued explaining her rights to her even after she asked to speak to her attorney did not believe that Clark was allowed to use the cellphone sitting within her reach to make the requested call. And his actions as revealed in the video footage reflect that understanding, as he continued to talk to Clark, giving her no time to actually pick up her cellphone and use it.

Critically, the video evidence reveals that Clark was not provided her statutory right to call an attorney before being required to decide whether to

submit to or refuse a preliminary breath test—despite several requests, including a specific request to talk to her attorney when asked to confirm that she was refusing the breath test. *See Vietor*, 261 N.W.2d at 829–30. As we explained in *Hicks*, "even if a phone was in reach, we do not think that alone suffices to provide a detainee a 'reasonable opportunity' to contact family [or an attorney]." 791 N.W.2d at 96. We concluded that the officer in *Hicks* failed to provide the detainee with a reasonable opportunity to make a phone call because "[d]uring Hicks's processing, Sparks never directed Hicks to the phone, asked Hicks for the name and number of his mother, or attempted to place the phone call for Hicks. Instead, Sparks elected to continue to delay Hicks's requests by continuing with the booking process." *Id.* at 97.

Likewise, here, Deputy Cheesman never told Clark that she could use her cellphone that Deputy Phillips brought in and that laid, covered up, on the desk. Nor did Deputy Cheesman tell Clark that she could retrieve a phone number from her cellphone. But more critically, when Clark responded that she was going to refuse everything upon Deputy Phillips telling her that they were going to ask her to consent or refuse the breath test after she made her attempts to call her attorney, Deputy Phillips immediately directed her to stand up and go to the computer screen, eliminating any reasonable opportunity to make the promised calls.

"[O]nce section 804.20 is invoked, the detaining officer must direct the detainee to the phone and invite the detainee to place [her] call or obtain the phone number from the detainee and place the phone call himself." *Id.*; *see also* Iowa Code § 804.20 ("If such person is intoxicated, . . . the call may be made by the person having custody."). Clark clearly invoked her statutory right to contact her attorney under section 804.20 before she said that she was going to refuse the breath test. Although Clark said she was going to "refuse everything," she

also specifically asked for her attorney when asked to sign the refusal. Deputy Phillips ignored that request, instead treating her response as a refusal to sign the form, and then sent her out of the room. Rushing a detainee through the informed consent process and ignoring her request to speak to her attorney when asked to confirm her decision to refuse the breath test is the antithesis of permitting a detainee to contact her attorney as required by section 804.20.

The majority also ignores expected behavior between detainees and detaining officers. It is worth repeating what we said in *Hicks*: "[S]ection 804.20 requires law enforcement to *take affirmative action* to ensure the request for a phone call is honored. Because of the disparity in power between detaining officers and detained suspects during the detention process, no lesser standard is adequate." 791 N.W.2d at 97 (emphasis added). A detainee sitting in a chair in the corner of a private room with two detaining officers would not feel free to ignore or interrupt the detaining officers—mid-conversation—to scroll through her personal phone to find her attorney's contact information, let alone to actually make the call. *See id.*; *see also* Marcy Strauss, *The Sounds of Silence: Reconsidering the Invocation of the Right to Remain Silent Under* Miranda, 17 Wm. & Mary Bill Rts. J. 773, 814–15 (2009) (noting that police discretion and leverage of authority permits officers to put off the will of suspects, ultimately depriving them of their rights); Peter M. Tiersma & Lawrence M. Solan, *Cops and Robbers: Selective Literalism in American Criminal Law*, 38 L. & Soc'y Rev. 229, 249, 254–55 (2004) (arguing that *Davis v. United States*, 512 U.S. 452 (1994), fails to account for social normative behavior such as politeness, hedging, and deference to authority). Iowa Code section 804.20 required the deputies to honor Clark's requests to speak to her attorney by giving her an actual opportunity to make the phone call. Telling Clark that she can make a phone call but not providing the time or means to do so are indistinguishable from the actions we rejected as

illusory in *Hicks*. *See* 791 N.W.2d at 97 ("Requiring a suspect with restrained liberty to affirmatively pick up a police department's telephone and contact family or counsel without invitation from the detaining officer transforms section 804.20 into an illusory statutory right.").

Having looked beyond the single snapshot and watched the full-length film, I conclude that Clark was not given the reasonable opportunity to contact an attorney to which she was statutorily entitled. I therefore respectfully dissent.

Waterman and McDermott, JJ., join this dissent.